## JoAnne M. Poston v. James G. Poston

[624 A.2d 853]

No. 92-139

Present: **Gibson, Dooley, Morse and Johnson, JJ.,
and Peck, J. (Ret.), Specially Assigned**

Opinion Filed February 19, 1993

*Charles D. Hickey*, St. Johnsbury, for Plaintiff-Appellee.

*Peter F. Langrock, Kevin E. Brown* and *Mitchell L. Pearl* of *Langrock Sperry & Wool*, Middlebury, for Defendant-Appellant.

**Morse, J.** James Poston, who had already obtained a Texas divorce from JoAnne Poston, appeals the judgment of the Vermont Family Court granting JoAnne child support, maintenance and attorney's fees. James' claims of error are that once the Texas divorce had been granted, the Vermont judgment violated the federal constitutional guarantee of full faith and credit, and that Vermont lacked statutory authority for the award. We affirm.

James and JoAnne Poston were married in 1971. During the next sixteen years, they moved frequently. The first three years they lived in Dallas, Texas, where James completed his medical internship and residency. They then moved to Ohio, Florida, Mississippi, Vermont, Minnesota, and, in 1982, back to Vermont, where James worked at the North Country Hospital in Newport. The couple separated in October 1987, and James returned to Texas, his current residence. JoAnne and their two children remained in Newport.

James filed for divorce in Texas in May 1989. JoAnne was served in Vermont by certified mail, but never appeared in that action. In July 1989, JoAnne filed for divorce in Vermont. James was personally served while he was in Newport that summer, and he appeared and defended the Vermont action.

On March 20, 1990, the 78th District Court of Wichita County, Texas, issued a decree of divorce to James Poston, asserting "sole and exclusive jurisdiction" over the action and noting that JoAnne had "not appeared and wholly made default." JoAnne was given physical custody of the children. James was awarded

visitation and ordered to provide the children an automobile, health insurance, education expenses, and airline tickets for visitation. He was also ordered to pay JoAnne $2,500 a month in child support, which would be reduced to $2,000 a month when the older child no longer qualified for it. The Texas court noted that the parties had, as agreed upon, sold their residence and split the proceeds, that James had purchased a car for JoAnne, and that JoAnne had received the majority of the parties' furnishings and possessions. The court remarked that JoAnne had "received benefits substantially in excess of one-half (½) of the property."

Further, the Texas court found that JoAnne was employed as a trained registered nurse and also was receiving support, unspecified in amount, from James. Although JoAnne had set aside her professional aspirations in favor of those of her husband and had spent much of her married life as a homemaker, the court found that she "voluntarily chose[ ] to work only part-time in the past" and that "no reason or necessity exists" for the award of maintenance. The court valued James' anesthesiology practice, which provided him with a six-digit income, at $10,000, $9,000 of which was attributed to his goodwill, leaving a net value of $1,000. The court then awarded James all of his retirement and IRA accounts and ordered that he pay a lump sum of $30,000 to JoAnne, that each party pay their own attorney's fees, and that James pay the court costs of bringing the Texas action. JoAnne did not appeal.

In Vermont, James sought to dismiss JoAnne's complaint under the doctrines of full faith and credit and res judicata, and on the ground that 15 V.S.A. § 752 did not permit the court to order maintenance to JoAnne because she was no longer married to him. The family court denied the motion, holding that although the Texas decree served to terminate the marriage, JoAnne did not have the requisite "minimum contacts" with Texas to subject her to personal jurisdiction there. Consequently, the Vermont court did not owe full faith and credit to the remainder of the Texas judgment. A temporary hearing was held April 18, 1991, at which the parties entered into a stipulation for child support and a temporary order governing the parties' financial and personal relationship. The matter went to trial on the merits on July 25, 1991, and September 18, 1991.

Meanwhile, in August 1991, the Texas court, finding that Jo-Anne's conduct caused James "great expense and anguish," issued an order enjoining JoAnne from taking any action, including a suit for divorce, that might interfere with the Texas divorce order or that would seek any process or satisfaction of any judgment in Vermont. Additionally, the Texas court ordered that JoAnne pay James $1,500,000, plus post-judgment interest, in damages should she pursue litigation and receive a judgment in Vermont against him. Finally, the Texas order was punctuated with a judgment in James' favor for $25,000 in attorney's fees incurred in defending himself in Vermont.

In February 1992, the Vermont Family Court ordered James to pay $2,500 a month in child support, maintain health insurance for the children, and pay the children's educational and transportation expenses, including the purchase and maintenance of the children's automobiles. The court found that in 1990 JoAnne earned $21,656, while James earned $441,598, and that JoAnne had a savings account and IRA account totalling $45,000, while James' Merrill Lynch and IRA accounts totalled $183,000. Based on the substantial disparity in income between the parties and the fact that JoAnne lacked sufficient property and income to meet her reasonable needs and could not support herself at the standard of living established during the marriage, the court ordered James to pay permanent maintenance adjusted yearly for inflation. Maintenance was set at $1,000 per month while child support was owing, increasing to $5,000 per month after child support was no longer due in order to build a retirement fund for her, the payments to end when she reached age sixty-two. If JoAnne remarried, the maintenance would be reduced to $12,000 per year. James was also ordered to maintain life insurance of $500,000 for JoAnne's benefit. The court ordered James to pay $1,500 a month in a maintenance supplement under 15 V.S.A. § 661(a), to mitigate the lower standard of living for the children when residing with their mother. Finally, the court awarded JoAnne over $16,000 in attorney's fees. James then appealed to this Court.

## I.

The United States Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Rec-

ords, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. Full faith and credit of the Texas divorce judgment, however, is conclusive in Vermont only if Texas had jurisdiction to render the judgment. *Williams v. North Carolina*, 325 U.S. 226, 229 (1945).

There is no question that the Texas court had jurisdiction to end the parties' marriage, and that the divorce is entitled to full faith and credit. "[E]ach state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent." *Williams v. North Carolina*, 317 U.S. 287, 298–99 (1942).

Under the doctrine of "divisible divorce," however, issues other than the dissolution of the marriage are severed from the divorce action when the court does not have personal jurisdiction over one spouse; in that case, the judgment does not resolve issues other than the marital status of the parties. *Conlon by Conlon v. Heckler*, 719 F.2d 788, 795–96 (5th Cir. 1983); 1 H. Clark, The Law of Domestic Relations in the United States § 13.4 (2d ed. 1987); see also *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 418–19 (1957) (where wife not subject to Nevada jurisdiction, Nevada court could not extinguish right to support in another state even though not reduced to judgment in the other state); *Estin v. Estin*, 334 U.S. 541, 549 (1948) (Nevada court lacking personal jurisdiction over wife could not terminate husband's preexisting obligation for support ordered in another state). We find the divisible-divorce concept applicable here; accordingly, if the Texas court was without personal jurisdiction over JoAnne, we need not give its judgment, other than that ending the parties' marital status, binding effect in Vermont.

In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the United States Supreme Court set out the constitutional test for a court to acquire personal jurisdiction over a nonresident defendant. In addition to an enabling law conferring personal jurisdiction (commonly called a "long-arm" statute), the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A determination whether "minimum contacts" exist rests on a number

of factors: the interests of the plaintiff and the forum state in proceeding with the action there; the nature and quality of the defendant's activity within that state; and whether it is fair and reasonable to require the defendant to conduct a defense within the plaintiff's choice of forum. *Kulko v. California Superior Court*, 436 U.S. 84, 92 (1978).

The Texas long-arm statute, 1 Tex. Fam. Code Ann. § 3.26(a)(2), provides that the Texas divorce court may exercise personal jurisdiction over a nonresident if "there is any basis consistent with the constitutions of this state and the United States." Thus, the Texas court could exercise personal jurisdiction over JoAnne to the fullest extent due process will allow. *Hoffman v. Hoffman*, 821 S.W.2d 3, 4–5 (Tex. Ct. App. 1992); *Kramer v. Kramer*, 668 S.W.2d 457, 458 (Tex. Ct. App. 1984).

■■ On the facts of this case, we conclude that JoAnne Poston's contacts with Texas are so minimal as to fail the due process test. Although JoAnne resided in Texas for three years during the early 1970's and bore her first child there, at the time of separation in 1987 Vermont was the parties' domicile. There is nothing in the record showing that JoAnne has had any other ties to Texas, and James has not contended otherwise. Subjecting her to personal jurisdiction in Texas under these circumstances was not reasonable, and Texas decisional law supports our conclusion. See, e.g., *Cunningham v. Cunningham*, 719 S.W.2d 224, 228–29 (Tex. Ct. App. 1986) (no personal jurisdiction where former Texas resident moved from state, severed all ties with state, and only contact was one attempted visit with his child approximately one year after move and shortly before Texas' attempt to establish jurisdiction over him); *Ford v. Durham*, 624 S.W.2d 737, 739–40 (Tex. Ct. App. 1981) (several visits over eight-year period to child in Texas and at least twelve business trips insufficient to subject father to personal jurisdiction in Texas for purposes of modification of New Mexico child support order).[1] Thus, despite the local Texas court's

---

[1] Nor do we find personal jurisdiction over JoAnne under § 11.051 of the Texas Family Code, which is applicable in those suits affecting the parent-child relationship. Although a literal reading appears to confer jurisdiction, "it must also be determined that such jurisdictional facts are constitutionally

assertion otherwise, it lacked jurisdiction to conclusively determine JoAnne's rights and we need not give its judgment binding effect, beyond the dissolution of the parties' marriage.

## II.

James further submits that in Vermont, apart from due process concerns, the family court could not award JoAnne maintenance because, as he reads 15 V.S.A. § 752, the court may make orders for maintenance only to a "spouse." Because James and JoAnne were no longer married at the time the Vermont court ordered maintenance, James argues, its award was barred by the statute.

■■ Section 752 of Title 15 grants the court the power to order "either spouse" to make maintenance payments to the other spouse under certain conditions. This Court has recognized that the purpose of spousal maintenance is to rectify "'inequality between the parties' financial positions.'" *Klein v. Klein*, 150 Vt. 466, 473, 555 A.2d 382, 386 (1988) (quoting *Buttura v. Buttura*, 143 Vt. 95, 99, 463 A.2d 229, 231 (1983)). Although the statutory language specifically refers to "spouse," we must construe the statute reasonably in context and in light of its purposes. Here, we do not believe the legislature intended "spouse" to mean anything more than a party to the marriage. The Vermont court, not the Texas court, had jurisdiction to decide the issue of maintenance. Further, this Court is not prohibited from remanding to the trial court an issue of maintenance, even though the parties remain divorced. See *Semprebon v. Semprebon*, 157 Vt. 209, 216, 596 A.2d 361, 365 (1991) (issue of maintenance remanded after marriage ended where family court made no ruling on plaintiff's request for maintenance); *Klein*, 150 Vt. at 472, 555 A.2d at 386 (cause remanded to award maintenance, although divorce undisturbed).

■ James directs our attention to *Grant v. Grant*, 136 Vt. 9, 383 A.2d 627 (1978), and *Loeb v. Loeb*, 118 Vt. 472, 114 A.2d 518 (1955), in support of the proposition that a Vermont court cannot award maintenance in a separate action, except by way of

---

sufficient to meet basic requirements of due process." *Dillon v. Medellin*, 627 S.W.2d 737, 740 (Tex. Ct. App. 1981).

modification, once the marriage has been dissolved. The *Grant* Court considered whether alimony could be awarded in Vermont where the parties were divorced in the Virgin Islands and both parties had appeared personally in the Virgin Islands court. The foreign court's failure to award alimony was not the result of its lack of power to do so. Because the issue of alimony was considered by the foreign court, this Court concluded that the divorce decree was res judicata and reconsideration of alimony in Vermont was precluded. 136 Vt. at 13, 383 A.2d at 629. Here, in contrast, the Texas court did not acquire personal jurisdiction over JoAnne. Thus, the Texas action is not subject to the doctrine of res judicata.

Although the *Loeb* Court stated that an order ending the marriage "terminates the wife's right to an award of separate maintenance," 118 Vt. at 483, 114 A.2d at 526, we cannot agree that once a marriage is validly ended, maintenance or support may not be ordered in a separate action thereafter. We note that the law concerning the award of maintenance has not remained stagnant since the *Loeb* decision. At present, a majority of states recognize that a suit for maintenance may be brought after termination of the marriage. 1 H. Clark, *supra*, § 13.4. Further, this Court has implicitly recognized that a Vermont court might have ancillary jurisdiction to decide issues of property division, maintenance, and child support even though a foreign divorce judgment may be entitled to full faith and credit. See *Driver v. Driver*, 148 Vt. 560, 562–63, 536 A.2d 557, 559 (1987) ("other issues concerning property division, maintenance, and child support remained over which the Vermont court might have ancillary jurisdiction even if the Massachusetts judgment is entitled to full faith and credit"). Therefore, we hold that the termination of a marriage does not automatically bar a later separate maintenance award.[2]

*Affirmed.*

---

[2] Following the court's decision, James was found twice in contempt for failure to pay child support, the child support maintenance supplement, and maintenance in accordance with the terms of the judgment. James also appealed these orders. We find no error in the trial court's contempt orders because James' attack on the orders depended entirely on his challenge to the underlying judgment for maintenance and child support.