## Roberta A. Boisselle v. Raymond N. Boisselle

[648 A.2d 388]

No. 90-321

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 24, 1994

*Paul R. Morwood*, South Burlington, for Plaintiff-Appellee.

*Mary P. Kehoe* and *Deborah Weiss* of *Saxer, Anderson, Wolinsky & Sunshine*, Burlington, for Defendant-Appellant.

**Dooley, J.** On motion to modify by plaintiff, Roberta Boisselle, the Chittenden Superior Court modified a divorce decree to amend a provision dealing with the disposition of the family residence. Defendant, Raymond Boisselle, appeals arguing that the court did not have the power to modify the preexisting property award. We agree and reverse.

The parties were divorced on October 25, 1984. The court's order, which was based on a stipulation, gave custody of the parties' minor child to plaintiff and required defendant to pay $75 per week in child support, with a cost of living adjustment provision. The provision critical to this case gave plaintiff exclusive use and possession of the family home on North Avenue in Burlington during the minority of the child. The order went on to require that the property be sold when the child reached her eighteenth birthday, with the proceeds to be split equally by the parties, and to require that the parties share

certain maintenance costs. The order also distributed the available personal property and provided that neither party would be entitled to alimony "now or permanently in the future."

Plaintiff moved to modify the order in June 1988, some three years before the child was to turn eighteen. Some time after the divorce, plaintiff developed a severe case of multiple sclerosis, which rendered her unable to work. As a result, plaintiff's income fell to $680 per month that she received from Social Security and a disability insurance policy. Plaintiff requested that the order be changed to allow her to remain in possession of the house, which she had modified to accommodate her disability, throughout her life. At the time the court addressed the modification question, the house was worth approximately $90,000, with an outstanding mortgage balance of $17,000 and a monthly mortgage payment was $202 per month.

Reasoning that V.R.C.P. 60(b)(5) allowed the court to prospectively modify a judgment in proper circumstances and that changing the date of sale of a house is a prospective modification, the court granted the motion and postponed the sale until plaintiff's condition "requires her to live elsewhere." The court justified its order on the unforeseen deterioration of plaintiff's health and the absence of hardship on defendant. Defendant appeals arguing that the court's order was an improper modification of a final property award. We agree.

■ As the trial court found, Vermont law is clear that the court cannot modify the property disposition aspects of a divorce decree absent circumstances, such as fraud or coercion, that would warrant relief from a judgment generally. See *Viskup v. Viskup*, 149 Vt. 89, 90, 539 A.2d 554, 555–56 (1987). We have applied this principle to cases in which the timing or manner of the transfer of property is in issue. For example, in *Viskup*, defendant was required to pay a property award to his wife in three annual installments. When defendant defaulted on the first installment, plaintiff moved to modify the payment schedule to accelerate the obligation to pay the entire amount. This Court held that in the absence of a provision allowing for acceleration, the change in the payment schedule was an improper modification of a property disposition. *Id.* at 91, 539 A.2d at 556. In *Robinson v. Robinson*, a case similar to that now before us, we reversed a modification order that extended the time in which the spouse awarded the family home had to pay off an amount awarded to the other spouse as settlement of the latter's property interest in the home. 130 Vt. 558, 562, 298 A.2d 556, 558–59 (1972). Although the modification did not change the amount of payment, the change in the timing of payment was sufficient to bring the case within the prohibition. *Id.* at 561, 298 A.2d at 558; see

also *Clifford v. Clifford*, 133 Vt. 341, 344–45, 340 A.2d 60, 62 (1975) ("adjustment of property rights accomplished by transfer of property and payment of money over a long period" cannot be modified absent grounds for modifying ordinary judgment).

The trial court here recognized the limitation on modification of property disposition awards but found that grounds to modify a civil judgment applied. Specifically, the court relied upon V.R.C.P. 60(b)(5),[1] which allows relief from judgment when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The court found in the last phrase the power to modify a judgment to the extent the modification operates on the prospective application of the judgment and is required by the equities of the situation. Thus, the court found it could, and did, "change the prospective effect of that judgment to allow plaintiff to remain in the house."

■ V.R.C.P. 60(b)(5) is identical to Federal Rule of Civil Procedure 60(b)(5), which implements the holding in *United States v. Swift & Co.*, 286 U.S. 106 (1932), an equity case dealing with the modification of an injunction. In *Swift*, the United States Supreme Court held that federal courts have the power to revoke or modify an injunction which "has been turned through changing circumstances into an instrument of wrong." *Id.* at 114–15. The Court distinguished between "restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change," which cannot be modified, and injunctions "that involve the supervision of changing conduct or conditions and are thus provisional and tentative," which can. *Id.* at 114.

■ Our one case interpreting Rule 60(b)(5) is so dissimilar from this one that it supplies little guidance. See *J.L. v. Miller*, 158 Vt. 601, 614 A.2d 808 (1992). The federal cases show that the primary significance of Rule 60(b)(5) is with regard to injunctions, although its application is not limited to equity actions. 11 C. Wright & A. Miller, Federal Practice & Procedure § 2863, at 205 (1973); see also *Kock v. Virgin Islands*, 811 F.2d 240, 244 (3d Cir. 1987) (rule refers primarily

---

[1] Although the case arose before the effective date of the Vermont Rules for Family Proceedings, the result would be the same under those rules. See V.R.F.P. 4(a) (Vermont Rules of Civil Procedure apply except as otherwise provided).

to prospective effect of equity decrees). That source is important because of the "basic principle that an injunction does not create any vested rights for a plaintiff; it is simply a remedy designed to vindicate pre-existing rights." *Stewart v. General Motors Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1985). Building on this principle, one court defined prospective application, the triggering requirement of the rule, as follows:

> Thus, the standard we apply in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is "executory" or involves "the supervision of changing conduct or conditions," within the meaning of . . . *Swift.*

*Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir. 1988). We can find no federal case that defines a judgment comparable to the property distribution decree in this case as executory, subject to modification under Rule 60(b)(5). Cf. *Marshall v. Board of Educ.*, 575 F.2d 417, 425 (3d Cir. 1978) (judgment at law for damages is inherently final and not subject to modification under Rule 60(b)(5)).

There are, however, a few state court cases involving the application of civil rules modeled on F.R.C.P. 60(b)(5) to divorce property decrees. Particularly instructive is *Lloyd v. Lloyd*, 533 P.2d 684 (Ariz. Ct. App. 1975),[2] in which a husband sought under the Arizona rule, numbered Rule 60(c)(5), to modify an order requiring him to pay his wife $6,000 in sixty monthly installments of $100 each. The court held that the rule did not apply to a lump sum payment, whether alimony or property, and whether payable immediately in full or in installments, reasoning:

> It seems that the type of final judgment to which clause (5) of Rule 60(c) is most often applied is one providing for injunctive relief. Other types of final judgments may have a continuing effect and be subject to modification in their prospective application, such as continued enforcement of liens or a declaratory judgment directed to matters in the future. However, where the final judgment is an award of money, Rule 60(c)(5) would not be applicable.

---

[2] The divorce law in effect when *Lloyd* was decided has since been superseded by statute. See *Fye v. Zigoures*, 562 P.2d 1077, 1079 (Ariz. Ct. App. 1977). Nonetheless, the *Lloyd* court's treatment of Rule 60 remains relevant to our discussion here.

*Id.* at 685. Other courts presented with attempts to modify property provisions using the state equivalent of F.R.C.P. 60(b)(5) have denied relief, usually by reiterating the inability to modify a property disposition provision. See *Ferguson v. Olmsted*, 451 P.2d 746, 749 (Colo. 1969) (denial of relief under Colorado equivalent of F.R.C.P. 60(b)(5) affirmed because property decrees cannot be modified); *McBride v. McBride*, 739 P.2d 258, 261 (Idaho 1987) (property disposition not prospective);[3] *Smith v. Smith*, 547 N.E.2d 297, 299–300 (Ind. Ct. App. 1989) (trial court decision refusing to amend property disposition under Indiana equivalent of F.R.C.P. 60(b)(5) affirmed because property awards based on stipulations merged into decrees cannot be modified except as agreement prescribes or unless parties later consent); cf. *Foster v. Foster*, 684 P.2d 869, 872 (Alaska 1984) (allowing modification under Rule 60(b)(6), although trial court granted modification under Rule 60(b)(5), after concluding 60(b)(1)–(5) did not apply).

We agree with the other courts that have considered the issue. The property disposition involved a fixed distribution of assets that vested rights in the parties. Plaintiff characterizes the issue as one of the timing of payment of defendant's award, yet were we to adopt her position, it would be entirely possible that defendant would never realize his interest during his lifetime.

In order to allow modification, we must find that the property disposition is executory, subject to change in response to changed conditions. Our rule against modification of property dispositions, applied to changes in timing of payment, is based fundamentally on the principle that such orders are not executory and subject to change. Viewed in this perspective, the application of Rule 60(b)(5) to this circumstance is not an exception to our settled law on modification; it involves overruling that law. We cannot endorse the use of Rule 60(b)(5) to modify the divorce order to allow plaintiff to retain possession of the home.

Finally, we must consider whether we can uphold the trial court's modification order on the basis that the underlying award of possession of the home is a form of maintenance and not a property

---

[3] In an earlier case, *Rudd v. Rudd*, 666 P.2d 639, 640 (Idaho 1983), the Idaho Supreme Court concluded that an unimplemented part of a property disposition is prospective and subject to modification. The case is dissimilar to this one, however, because neither party had followed the original property disposition order, and both parties sought a new order.

disposition. In support of this argument, plaintiff points out that in her motion to modify she requested an award of spousal support

■■ A number of courts have, in appropriate circumstances, characterized provisions granting one spouse possession of the home for a specific time as child support or spousal maintenance and not as property dispositions. See *Duncan v. Duncan*, 379 So. 2d 949, 952 (Fla. 1980); *Kerr v. Kerr*, 243 N.W.2d 313, 315 (Minn. 1976). As noted above, our precedents find that provisions calling for the payment of money to the nonpossessory spouse for that spouse's interest in the property are part of the property disposition. See, e.g., *Robinson*, 130 Vt. at 561, 298 A.2d at 558. These precedents are not inconsistent with a finding that temporary possession of the house is a child support or maintenance award. For three reasons, however, we cannot find that the provision in the original decree awarding possession to plaintiff was a spousal maintenance provision.

First, the decree, which was based on a stipulation of the parties, states specifically that neither party shall be entitled to "alimony, now or permanently in the future." Thus, neither the parties nor the trial court thought that the award of possession and use of the home was a maintenance award.

Second, the right to possession was specifically limited to the period of minority of the parties' child. Were we to characterize the award as any kind of support, this limitation promotes a conclusion that the possession of the house was an attribute of child support, in the nature of a maintenance supplement while a child support obligation exists. See 15 V.S.A. § 661(a) (maintenance supplement is "to be paid while a child support obligation" exists). It is not consistent with a characterization of the right to possession as general spousal maintenance.

Third, extending the right to possession throughout plaintiff's life greatly reduces defendant's property interest. As *Robinson* points out, defendant may not have "any reasonable hope of enforcement of" his property right. 130 Vt. at 562, 298 A.2d at 559. Even if we could characterize plaintiff's right to temporary possession of the home as maintenance, an unlimited extension of that possession necessarily affects the underlying property rights.

■ Since the award of possession of the home to plaintiff was not maintenance, it was error to modify the divorce order to extend that right indefinitely.

*Reversed and remanded.*

**Morse, J.,** dissenting. I do not agree with the Court's assumption that spousal maintenance in this case could not, under any circumstances, be awarded under 15 V.S.A. § 758 (modification of maintenance). Should spousal maintenance be forever barred if it is waived or not reserved in the divorce judgment? I do not think so. The relevant Vermont statutes, and the policy underpinning them, support relief in this case. I respectfully dissent.

The issue of maintenance is governed by 15 V.S.A. § 752, which gives the family court discretion to award maintenance from one spouse to the other upon a showing of certain criteria. After a divorce, 15 V.S.A. § 758 allows the court "upon a showing of a real, substantial, and unanticipated change of circumstances" to "annul, vary or modify a judgment relative to maintenance." This discretionary authority may be exercised "from time to time," depending on how and to what degree circumstances vary. *Id.*

In my view, the substance of the family court's modification in this case was authorized by the plain meaning of § 758. The initial "judgment relative to maintenance," which in part stated, "Neither party shall be entitled to alimony, now or permanently in the future," was modified to provide the wife use of the former marital residence. While the modification did not require the payment of money, the use of the home was its functional equivalent.

The facts of this case and the legal criteria demonstrating the wife's need for maintenance are a perfect fit. The only argument against treating this case as one for maintenance is the *form* of the original judgment, which characterized as a property distribution the need of the wife to use the home. The Court's three rationales denying the wife relief boil down to a "So what?" A mere change of label from property distribution to alimony in the divorce judgment would have, under the Court's view, changed the outcome of this case. I demur from the Court's technical approach.

No Vermont case prohibits the award of maintenance here. Vermont precedents like *Loeb v. Loeb*, 118 Vt. 472, 483–86, 114 A.2d 518, 526–28 (1955) (only existing maintenance in foreign judgment may be modified), and *Grant v. Grant*, 136 Vt. 9, 14, 383 A.2d 627, 629–30 (1978) (same), are not impediments. They deal with foreign divorces and must be read in conjunction with *Poston v. Poston*, 160 Vt. 1, 8, 624 A.2d 853, 857 (maintenance action may be pursued in Vermont after foreign divorce not providing for maintenance), *cert. denied,* — U.S. —, 114 S. Ct. 66 (1993).

As noted, *Loeb, Grant,* and *Poston* all address whether a Vermont court may award maintenance after a foreign court has granted a

divorce without making a maintenance provision. In *Loeb*, when husband obtained a "quickie" divorce in Nevada without any provisions for alimony, wife brought an action in Vermont and obtained support. The Court held, under a predecessor statute to 15 V.S.A. § 752, the then statutory authority for granting alimony, that alimony was an incident of divorce and that in the absence of an action granting divorce, trial courts had no jurisdiction to order it. *Id.* at 484–85, 114 A.2d at 526–27. In addition, no independent action for alimony was available at common law. *Id.* at 486, 114 A.2d at 527.

In *Poston*, we in effect overruled *Loeb*, holding that termination of a marriage did not automatically bar a later separate maintenance award. 160 Vt. at 8, 624 A.2d at 857. We interpreted 15 V.S.A. § 752, the current statute authorizing maintenance, differently than the Court interpreted its predecessor in *Loeb*, and held that the language limiting maintenance to "spouse" did not preclude maintenance after divorce. *Id.* at 7–8, 624 A.2d at 856–57. We recognized that "the law concerning the award of maintenance has not remained stagnant since the *Loeb* decision" and joined the majority of states that allow an independent suit for maintenance after a foreign ex parte divorce. *Id.* at 8, 624 A.2d at 857.

I recognize that in contrast to the rule on foreign divorces, the general rule on domestic divorce orders containing no maintenance provisions is that spouses are foreclosed from making later maintenance requests unless there is an express reservation of the issue in the divorce order. See, e.g., *Benavidez v. Benavidez*, 660 P.2d 1017, 1020 (N.M. 1983); *Becker v. Becker*, 262 N.W.2d 478, 483 (N.D. 1978). This rule is based on the theory that the divorce court no longer has jurisdiction of the maintenance issue once the divorce is final. In several states, it has led family law practitioners to seek nominal maintenance awards in every case in order to reserve the issue. See, e.g., *McNally v. McNally*, 516 So. 2d 499, 502, 503 (Miss. 1987) (urging trial courts to reserve maintenance issue in every case it is not awarded to avoid this ruse).

An explicit reservation of the maintenance issue, however, ought not be necessary to guarantee jurisdiction. See *Cody v. Cody*, 154 P. 952, 955 (Utah 1916) (every divorce decree should be treated as if maintenance issue had been reserved). Rather, the financial aspects of the divorce order should be seen as an integrated whole designed to provide the fairest complete resolution of all the issues for both parties. It is the divorce judgment, of which maintenance is one aspect, that parties seek to modify. Compare 15 V.S.A. § 758 ("court

may from time to time annul, vary or modify a judgment relative to maintenance" upon a showing of changed circumstances) with the language of the prior version of this statute analyzed in *Grant*, 136 Vt. at 12, 383 A.2d at 629 ("After a decree for alimony . . . the court may revise and alter its decree from time to time . . . respecting the amount of such alimony . . . ."). Nothing in § 758 suggests that, merely because the divorce judgment is silent on maintenance, it cannot be modified with respect to maintenance. See *Kinsman v. Kinsman*, 748 P.2d 210, 213–16 (Utah Ct. App. 1988) (Jackson, J., concurring) (construing Utah's divorce modification statutes to allow maintenance to be awarded at modification because court has continuing jurisdiction over divorce decree and that decree is only res judicata as to circumstances as they exist at the time of divorce, not as to changed circumstances requiring further adjudication).

I find no meaningful distinction that would allow a separate maintenance action after a foreign divorce but not allow modification of a domestic one or that would allow modification when maintenance is initially awarded in any amount but not when maintenance is absent from the judgment. If maintenance was omitted from the divorce judgment because, for example, the wife did not ask for it or the husband lacked ability to pay, and if her needs later become pressing and he is then able to pay, then the wife should be able to bring an action to receive an appropriate sum. See 2 H. Clark, The Law of Domestic Relations in the United States § 17.4, at 244 (2d ed. 1987); *Reynierson v. Reynierson*, 303 S.W.2d 252, 253, 254 (Ky. 1957) (maintenance may be awarded after divorce judgment where failure to do so would cause a miscarriage of justice). Husband's reliance on the divorce judgment, relevant to the equities between the parties, can be taken into account. 2 Clark, *supra*, § 17.4, at 244.

Supporting the no-maintenance-after-divorce rule is the policy of finality. Each spouse knows that the marriage is terminated and can plan accordingly without the threat of unexpected financial demands from an ex-spouse. Equally important policy considerations, however, may weigh in favor of modification. If wife here had received even token maintenance at the outset, there would be no doubt that she could return to court, argue changed circumstances, and receive a modification. The right to maintenance—especially in long-term marriages where significant life choices have been made in reliance on the marriage—should not rest on serendipity, whether, for example, a serious medical condition or an inability to maintain employment becomes known the day before the divorce judgment or the day after.

By creating a rule that bars future maintenance, we encourage spouses to needlessly litigate this issue as the only avenue to insure against future change. Similarly, trial courts give maintenance in a doubtful case in order to keep jurisdiction over the issue. See, e.g., *Henry v. Henry*, 162 Vt. 613, 613, 643 A.2d 845, 845 (1994) (mem.) ($1-a-year maintenance provided because employment future for one spouse seemed doubtful).

My proposed approach would not upset the reasonable expectations of the potential obligor of a long-term marriage. In *Klein v. Klein*, 150 Vt. 466, 473, 555 A.2d 382, 387 (1988), we adopted the view that maintenance is intended to offset the hardships of divorce, that "'having entered one of the strongest and most fundamental relationships known to the law, [married persons] must continue to bear its financial burden where [they] can reasonably do so and where it is necessary in order to prevent a relatively greater hardship'" to the less financially secure spouse. *Id.* (quoting 2 Clark, *supra*, § 17.5, at 254–55). Society is, of course, willing to help offset that hardship in appropriate cases. But the parties who chose the marriage and arranged their lives around its benefits should be the first to absorb its burdens.

I would affirm.