214 VT 2



Pahnke/Office of Child Support v.
Pahnke (2012-387, 2012-416 & 2013-007)

 

2014 VT 2

 

[Filed 10-Jan-2014]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at:
Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any
errors in order that corrections may be made before this opinion goes to press.

 

 


 2014 VT 2
 
  


 Nos. 2012-387, 2012-416 & 2013-007
 
  


 Paula Pahnke/Office of Child
 Support
 
 
 Supreme Court
 
 
  
 
 
  
 
 
      v.
 
 
 On Appeal from
 
 
  
 
 
 Superior Court, Chittenden
 Unit,
 
 
 Jonathan Pahnke
 
 
 Family Division
 
 
  
 
 
  
 
 
  
 
 
 October Term, 2013
 
 
  
 Linda Levitt, J.
 
 
  
 
 Sarah B. Haselton, Burlington, for Plaintiff-Appellee.

 

Jonathan A. Pahnke, Pro Se, Findlay, Ohio,
Defendant-Appellant.

 

 

PRESENT:   Reiber, C.J., Dooley, Skoglund and
Robinson, JJ., and Crawford, Supr. J., 

                    
Specially Assigned

 

 

¶
1.          
CRAWFORD, Supr. J., Specially Assigned.   Father
appeals from the modification of a foreign child support order.  He argues
that he was never properly served with the motion to modify
child support, that the Vermont family division lacks personal and subject
matter jurisdiction over him and this matter, and that the magistrate
improperly ruled that mother did not owe him arrears for the period preceding
the modification.  We affirm in part, but remand for recalculation of
mother’s child support arrearage.

¶
2.          
Father and mother were divorced in Michigan in 1997.  The Michigan
decree awarded custody of the parties’ four children to father.  Mother
was ordered to pay child support of $48 per week.

¶ 3.           Following
the divorce, mother moved to Vermont.  Within a short period of time,
father also moved to Vermont with the children so that they could be closer to
mother.  He then left Vermont with the two younger children and moved to
Nashville, Tennessee to further his education.  The two older children
remained behind with mother in Vermont.  Father later brought the two
younger children back to Vermont, and by 2000, all four children were living in
Vermont with mother.  The four children have remained with mother in
Vermont since 2000.  The youngest is now 19. 

¶ 4.           In
August 2000, mother filed an emergency motion in the Chittenden Family Court to
modify parental rights and responsibilities.  She sought legal and
physical custody of the children.  The family court issued an amended
order on August 15, 2000 granting sole physical and legal parental rights and responsibilities
for the children to mother.  The court issued the order on an emergency
basis and ordered mother to submit proof of service of the amended order within
three days.  Within a few weeks, father signed an acknowledgment of
service of the amended custody order. 

¶ 5.           In
January 2004, the court suspended father’s parent-child contact until further
order.  Later that year, OCS sought to register the Michigan child support
order with the Chittenden Family Court.  Father signed two
acceptance-of-service forms acknowledging receipt of the request for
registration and prior motions filed in the case.  He provided a post
office box address in Shelburne, Vermont.  The family court issued an
order approving registration of the Michigan order in December 2004.

¶ 6.           In
2006, the parties returned to family court after mother filed a
relief-from-abuse petition.  Both parties appeared for the final hearing,
and the court denied mother’s request for a final order.  Mother
also moved for a modification of parent-child contact. Father did not file a
response to the motion.  The court ordered no contact with father
until further order. 

¶ 7.           On
September 16, 2008, OCS filed a motion to modify the Michigan support
order.  The court scheduled hearings in November and December 2008 that
were continued due to lack of service on father.  In January 2009, the
family court issued an order for alternative service at an address in
Shelburne.[1] 
Service by tack process occurred on January 12, 2009.

¶ 8.           The
magistrate issued a default child support order on February 23, 2009, which
modified mother’s child support obligation to $0, relieved her of any
obligation to pay arrears, and established a support obligation for father of
$1063.31 per month.  Mother appealed the order because the award of
support was not retroactive to the change of custody in August 2000.  In
July 2009, the family court denied mother’s appeal and affirmed the decision of
the child support magistrate.

¶ 9.           In
August 2009, father filed an emergency motion to set aside the magistrate’s
February order.  He provided an address in Kendallville, Indiana.  He
challenged the service by tack order on the grounds that he was not living at
his mother’s home in Shelburne in January 2009 when the sheriff served the
motion to modify.  He also challenged the substance of the support
calculation, which was based on estimates of support he had received over the
years from his mother.  The family court denied the motion for emergency
relief on the grounds that service of the hearing notice was proper and father
could request a modification of support if his financial situation had
changed.  Father appealed to this Court, which determined that the service
by tack order was inadequate after OCS admitted that the Shelburne address was
not father’s “dwelling house or usual place of abode.”
 See Pahnke v. Pahnke, No. 2010-032, 2010 WL 7789284, at *2 (Vt.
Dec. 8, 2010) (unpub. mem.), https://www.vermontjudiciary.org/UPEO2006-2010/eo10-032.pdf.
We reversed the default child support order and remanded the case for further
proceedings.  Id.    

¶ 10.       On remand, father
moved to dismiss the renewed motion to modify child support for lack of
personal jurisdiction.  The child support magistrate denied father’s
motion on March 10, 2011.  She found numerous contacts between father and
the State of Vermont prior to September 2008, when OCS filed the motion to
modify child support, including residence in the state while he cared for his
mother in 2008.  The magistrate ordered OCS to serve father with another
copy of the motion to modify and a hearing notice, and stated that the motion
to modify would be set for hearing once the court received proof of service.  The
family court dismissed an appeal of this ruling because it was not a final
order.   

¶ 11.       On June 15, 2011,
OCS sent father the motion to modify child support by regular mail.  The
magistrate scheduled mother’s motion to modify child support for a hearing on
October 10, 2011, and court staff sent notice of the hearing to both parties
and OCS on September 1, 2011.[2]
 Father filed a motion for leave to proceed in forma pauperis, which was
granted by the clerk.  In September he also filed a “Notice of Change of
Address” requesting that “[h]enceforth please send all notices to: [a street
address] in Wooster, Ohio.”

¶ 12.       On September 19,
father filed a notice of appeal from the family court order dismissing his
appeal from the magistrate’s ruling on personal jurisdiction.  At the same
time, he filed a motion to stay the child support modification hearing. 
This Court dismissed the appeal on the ground that it was untimely filed. See Pahnke
v. Pahnke, No. 2011-331 (Vt. Oct. 11, 2011) (unpub. mem.). 

¶ 13.       On October 11,
2011 the family court issued a second hearing notice to the parties, indicating
that the child support modification hearing was reset for November 14. 
Father filed a motion on October 31 asking the magistrate to vacate her 2009
decision to “zero out” the original child support order issued in Michigan at
the time of the divorce decree.  On November 7, father filed a motion
pursuant to Vermont Rule of Civil Procedure 60(b)(4)
to vacate the original family court order in 2000 awarding custody of the
children to mother.  The motion raised issues of service of process and
personal and subject matter jurisdiction. 

¶ 14.       The magistrate
held an evidentiary hearing on the motion to modify child support on November
14, 2011 and March 12, 2012.  Father participated in both days of the
hearing by telephone.  On May 10, 2012, the magistrate issued a decision
on the motion.  The decision confirmed that mother owed father nothing
under the Michigan order from the date when mother was granted custody in 2000
to the date that OCS filed the motion to modify in 2008.  It awarded
mother support from the date of the modification motion forward.[3]  A child support order incorporating
the findings in the magistrate’s decision was issued in July.  Father
appealed the magistrate’s May 10 decision to the family court. 

¶ 15.       On August 1,
2012, the family court denied father’s Rule 60(b)(4)
motion to vacate the 2000 custody order.  It ruled that father’s challenge
to an existing order under Rule 60(b)(4) on grounds of “voidness” must relate
not to the merits of the individual decision but to the larger question of
whether the case was of the type over which the family court had
jurisdiction.  The family court concluded that under the Uniform Child
Custody Jurisdiction Act (UCCJA), 15 V.S.A. § 1042,[4] Vermont had jurisdiction over motions to
modify foreign custody orders under the circumstances alleged in this
case.  It denied father’s challenge to the court’s exercise of personal
jurisdiction on the grounds that personal presence of the defendant in the
state is not mandatory under the UCCJA and that father had failed to appeal
previous orders of the court establishing personal jurisdiction. 

¶ 16.       On September 14,
2012, the family court affirmed the magistrate’s decision modifying child
support.  The court ruled that father had waived any defect in service of
process through his filings and appearance at the contested hearing.  With
regard to the merits, the family court accepted the magistrate’s factual
findings and her conclusions of law.  On October 15, father filed a notice
of appeal in this Court from the family court’s September 14 decision.[5] 

¶ 17.       On appeal, father
makes three related arguments: first, that service of the hearing notice and
motion to modify was insufficient; second, that the family court did not have
personal jurisdiction over father; and third, that the family court violated
the jurisdictional requirements of the Uniform Interstate Family Support Act
(UIFSA), 15B V.S.A. §§ 101-904, when it modified the Michigan child support
order.  Father also argues that the magistrate erred in “zeroing out”
mother’s child support arrearage under the Michigan order for the years
following the change of custody in 2000 to mother.  These are questions of
law, which we consider de novo.  Office of Child Support ex rel. Lewis
v. Lewis, 2004 VT 127, ¶ 6, 178 Vt. 204, 882 A.2d 1128.
 In doing so, we accept the magistrate’s findings of fact unless they are
clearly erroneous.  Cavallari v. Martin, 169 Vt.
210, 220-21, 732 A.2d 739, 746-47 (1999). 

I.
Service of Process

¶ 18.       As noted above,
we previously remanded this case because the magistrate’s February 2009 default
order was entered without proper service upon father.  Pahnke,
No. 2010-032, at 2.  Although father subsequently appeared at and
participated in a two-day contested child support modification hearing, he
renews his complaint that service of the hearing notice and motion to modify
child support was improper. 

¶ 19.       Vermont Rule for
Family Proceedings 4(b)(2)(B) provides for service of the complaint (or in this
case, the motion to modify) and the hearing notice by (1) personal service, (2)
certified mail, or ordinary first-class mail if the certified mail envelope is
rejected, and (3) publication. V.R.F.P. 4(b)(2)(B)(iii)-(v).
 In her May 2012 order, the magistrate carefully considered the question
of service of process upon father.  Father has proved very
difficult to serve either by certified mail or by personal service as required
by Rule 4(b)(2)(B).  Father moves
frequently.  Since 2000 he has lived in Tennessee, Vermont, Indiana and
Ohio.  In a “sheriff service information sheet” provided to a sheriff in
Nashville, Tennessee in 2003 as part of efforts by the Chittenden Family Court
to make personal service, mother described him in prophetic terms: 

Will defendant avoid service or is there
anything the serving officer should know when he/she attempts service of the
paperwork on the person? 

Yes will avoid service if at all
possible.  Don’t call him.  He is a very suspicious type
(unless one is clever).

Numerous motions and court
documents sent to father’s addresses over the past thirteen years have been
returned as undeliverable.

¶ 20.       Despite eluding
service, father has participated actively in this case since 2009 and has
frequently updated the court with his address.  As the magistrate
noted, father’s initial filings did not reserve the defense of lack of
service.  In father’s “Emergency Motion/Appeal to Set Aside and/or modify
Order Re: Retroactive Child Support and Stay Enforcement Action Pending
Hearing” filed on August 13, 2009, he provided an address in Kendallville,
Indiana and informed the family court by letter that he would participate at
any scheduled hearing by telephone.  He provided similar instructions on
November 2, 2009 when he filed a motion for reconsideration of the denial of
his emergency motion.  For both filings, he provided an “Official Notice
of Change of Mailing Address.”  Similarly, in the course of his 2010
appeal to this Court, he provided his Kendallville address for use by mother and
the court.  

¶ 21.       Only after the
remand from this Court in December 2010 did father begin to qualify his
participation as a “special appearance” and assert lack of service of the 2000
amended custody order and the 2008 motion to modify and hearing notice as
defects in the legal process.  Even then, however, he did not object to
OCS’s service of the motion to modify in 2011 by regular mail.  He also
received notice by regular mail from the family court of the hearing dates for
the 2011-2012 contested child support hearings. He participated in both
hearings by telephone and makes no claim that he lacked actual notice of the
hearings.  

¶ 22.       The defense of
insufficiency of service of process is waived if it is not raised at the first
opportunity.  Civil Rule 12(h)(1) compels the early assertion of this and
other procedural defenses in order to avoid piecemeal litigation over
preliminary issues that do not go to the substantive heart of the case.  See 5C C.A. Wright & A. Miller, Federal Practice and Procedure
§ 1391 (3d ed. 2006).  This principle applies equally in cases
for which there is no requirement of a responsive pleading, including family
court petitions and motions.  See Rollo, 2013 VT 74, ¶ 10 (stating
that defendant in relief-from-abuse case must raise issue of insufficiency of
service by motion.) 

¶ 23.       After we remanded
this case in 2010 for lack of service, the family court ordered OCS to serve
father with the 2008 motion to modify.  OCS sent the motion to father by
regular mail on June 15, 2011.  OCS did not comply with the steps required
for service by Family Rule 4(b)(2)(B).  Father,
however, failed to challenge the sufficiency of the 2011 service in any of the
motions that he filed prior to the November 14, 2011 modification hearing.[6]  Though he continued to argue that
he was never properly served at the inception of this case in 2000, he did not
object to OCS’s service of the motion to modify by regular mail.  Father
therefore waived this defense.  See Attig v. Attig, 2004 VT 80,
¶ 18, 177 Vt. 544, 862 A.2d 243 (holding that father waived a claim of
insufficiency of service of process where he failed to raise the issue in
motions or pleadings in family court). 

¶ 24.       The first time
around, in the context of a default order, this Court accepted the parties’
representation that father did not get notice of the 2008 motion to modify or
the subsequent hearing due to a mistake in the tack process.  The second
time around, father’s argument is less compelling.  Father repeatedly
provided the family court with an address for delivery of the hearing notice
and other papers.  He obviously knew about the pending motion to modify,
since in 2009 he filed his own emergency motion to set aside the order
establishing child support in the mother’s favor.  He then pursued a
successful appeal related to that order.  When OCS returned to court to
seek modification, father received actual notice of the motion and the hearing
date by mail.  He responded by filing several motions prior to the
hearing.  He obtained permission from the court to appear by
telephone.  He participated by telephone at both hearings.  After the
first hearing, he requested additional hearing time and more opportunity for
discovery, which he was granted. 

¶
25.      
Although father raised the issue of insufficient service with regard to
the 2000 and 2009 orders when he participated in the second modification
process, he did not object to service of the renewed motion to modify filed in
2011 and the second hearing until after the 2011-2012 child support
modification hearings.  By making filings with the court and supplying his
address, he waived the defense of service of process, just like any other
litigant who fails to preserve the defense through his conduct in appearing to
defend himself on the merits.  See Rollo, 2013 VT 74, ¶ 11
(holding that defendant in family case who receives actual notice of an action
must raise defense of insufficient service by filing a motion to dismiss prior
to merits hearing or raise the defense at the hearing itself otherwise the
defense is waived); Myers v. Brown, 143 Vt. 159, 165, 465 A.2d
254, 257 (1983) (“[P]arties by their conduct may waive objections to service
which is void for lack of substantial compliance with legal prerequisites.”); In
re Stocker, 133 Vt. 161, 163, 333 A.2d 92, 93 (1975) (explaining that
defendant’s “failure to raise a defense based on insufficiency of service of
process for thirteen months after the bringing of the appeal puts the question
out of reach by waiver”).  The issue is not merely a matter of form. 
A party who raises the defense of service of process at the first opportunity
provides notice to the court and to the other side that the case may not be
ready for a hearing since he is insisting on service in compliance with the
applicable rule.  A party like father, on the other hand, who responds to
the motion to modify by providing an address and attending the hearing indicates
just as clearly that he has appeared to address the merits.  A party is
not permitted to appear to defend the claim on the merits without specifically
objecting to service, and then to complain that he was improperly served. 

II.
Personal Jurisdiction

¶ 26.       Father argues
that Vermont lacks personal jurisdiction over him.  In order for a Vermont
court to have personal jurisdiction over a nonresident defendant who is outside
of Vermont, there must be an enabling statute conferring personal jurisdiction
over nonresident defendants.  Poston v. Poston,
160 Vt. 1, 5, 624 A.2d 853, 856 (1993).  Here, the applicable
enabling statute is § 201 of UIFSA, which authorizes the family court to
exercise jurisdiction over a nonresident for purposes of establishing or modifying
a child support order where “there is any other basis consistent with the
constitutions of this state and the United States for the exercise of personal
jurisdiction.”  15B V.S.A. § 201(7). 
The terms of this provision are broad enough to permit a court to exercise
jurisdiction over a nonresident defendant to the full extent permitted by the
Due Process Clause of the Fourteenth Amendment to the United States
Constitution.  See Official Comment, 15B V.S.A. § 201 (stating that
intent of § 201 is to insure that state has long-arm statute as broad as
constitutionally permitted). 

¶ 27.       For a state to
exercise personal jurisdiction over a nonresident defendant, due process
requires that the nonresident “have certain minimum contacts with [the forum
state] such that the maintenance of the suit does not offend traditional
notions of fair play and substantial justice.”  Int’l
Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation omitted).
 We therefore must look to whether father has “minimum contacts” with the
State of Vermont, examining “the interests of the plaintiff and the forum state
in proceeding with the action there; the nature and quality of the defendant’s
activity within that state; and whether it is fair and reasonable to require
the defendant to conduct a defense within the plaintiff’s choice of forum.” Poston,
160 Vt. at 5-6, 624 A.2d at 856 (citing Kulko v. Cal. Super. Ct., 436
U.S. 84, 92 (1978)).  

¶ 28.       The first and
third elements weigh in favor of Vermont as a forum. Both mother and the State
of Vermont have a strong interest in proceeding with this action in Vermont
because the children who are the subject of the support order reside here. At
times, the family has received public assistance from the State. In addition,
since father has shown himself to be willing and able to vigorously defend
himself in these proceedings by telephone, he is not unduly prejudiced by the
choice of forum.

¶ 29.       The second
element also weighs in favor of Vermont as a forum.  As the magistrate
determined in her order, father has had consistent contact with Vermont since
1998.[7] 
Following the Michigan divorce, he moved here in 1998 and lived in Montgomery
for nearly a year.  He filed a divorce action against his second
wife in Franklin County and alleged residence in Swanton, Vermont.  After
mother moved to Vermont, father came and went with the children between 1998
and 2000.  In 2000 he returned to Vermont to bring the older children to
live with their mother.  In 2006 he was present in Vermont and appeared in
family court as the defendant in mother’s unsuccessful attempt to obtain a
relief-from-abuse order.  By his own admission, he resided with his mother
in Shelburne, Vermont in “2007/2008.”[8] 
These contacts are clearly sufficient to meet the due process requirements set
forth in International Shoe.  See Packard v. Packard, 613
N.E.2d 923, 927-28 (Mass. App. Ct. 1993) (finding that father had sufficient
contacts with forum state to be subject to long-arm jurisdiction where parties
had married in state and resided there briefly, where he returned to state
during pendency of divorce action, and had filed separation agreement and
visitation motions in state court, even though it had been four years since the
latter actions); Harris v. Harris, 410 S.E.2d 527, 532 (N.C. Ct. App.
1991) (finding that father had sufficient contacts with forum state where
parties were married and had resided in state twenty years earlier, father
visited relatives in state frequently in intervening years and after mother
moved back to state, and father traveled to state for business
regularly).  In sum, father has sufficient contacts with Vermont to
support the exercise of personal jurisdiction over him under the Due Process
Clause.  

III.
Subject Matter Jurisdiction Under UIFSA

¶ 30.       The third issue
raised by father is whether the modification proceeding violated the statutory
preference established by UIFSA for modification by the issuing state.  In
an effort to avoid conflicting child support orders, UIFSA strictly limits the
authority of the receiving state to modify the original order.  Unless the
parties file a written consent in the issuing state for a court of this state
to modify the order, see 15B V.S.A. § 611(a)(2), the person seeking to
modify the order must satisfy the threshold requirements set forth in 15B
V.S.A. § 611(a)(1).  

¶ 31.       First, the order
must be formally registered in the forum state.  15B
V.S.A. § 611(a).  In this case, the Michigan order was
registered in Vermont in 2004.  Second, none of the parties, including the
children, may still reside in the issuing state.  Id. § 611(a)(1)(A).  This requirement is also satisfied, as
neither father nor mother, nor their children, live in Michigan.  Third,
the respondent must be subject to the personal jurisdiction of this state.
 Id. § 611(a)(1)(C).  As
discussed above, the magistrate correctly determined that father was subject to
the personal jurisdiction of the Vermont family court.  The remaining
requirement is that the party seeking the modification must be a nonresident of
this state.  Id. § 611(a)(1)(B).  In
other words, a party cannot move away from the issuing state and seek a modification
through his or her new home state.  As mother is a resident of Vermont,
this requirement is not satisfied. Section 611 therefore does not afford a
basis for the Vermont family court to modify the Michigan order.

¶ 32.       Section 613 of
Title 15B creates an exception to § 611.  It permits a court of this
state to modify a foreign support order when all of the parties reside in this
state.  Section 613 states:  

(a)   If all of the parties who are
individuals reside in this state and the child does not reside in the issuing
state, a tribunal of this state has jurisdiction to enforce and to modify the
issuing state’s child support order in a proceeding to register that order.

(b)   A tribunal of this state exercising
jurisdiction under this section shall apply the provisions of chapters 1 and 2
of this title, this chapter, and the procedural and substantive law of this
state to the proceeding for enforcement or modification. Chapters 3, 4, 5, 7,
and 8 of this title do not apply.

15B V.S.A. § 613.  “This section is designed to
make it clear that when the issuing state no longer has continuing, exclusive
jurisdiction and the obligor and obligee reside in the same state, a tribunal
of that state has jurisdiction to modify the child support order and assume continuing,
exclusive jurisdiction.”  Official Comment, 15B V.S.A.
§ 613.  When OCS filed the motion to modify the child support
order in 2008, mother and the children lived in Vermont, and the record
demonstrates that father lived with his own mother in Vermont during that year.[9]  Thus, under § 613, Vermont
assumed continuing, exclusive jurisdiction over this matter in 2008.
 Father’s subsequent moves to Indiana and then to Ohio did not deprive the
Vermont court of jurisdiction.  See 15B V.S.A. § 205 (stating that
once this state assumes continuing, exclusive jurisdiction over a support
order, that jurisdiction continues as long as this state remains the residence
of the obligor, the obligee, or the child). 

 

 

IV. Child Support Arrearage

¶
33.      
The parties’ claims for child support arrears raise two issues: did the
magistrate have authority to eliminate support due to father under the Michigan
order prior to modification of the order; and what is the effective date for
the order as modified? 

¶
34.      
We first consider whether the magistrate and the family division erred
in eliminating the child support awarded to father by the Michigan court for
the period between the change of custody in 2000 and the filing of the motion
to modify in 2008.  Under UIFSA, modification of a registered foreign
child support order is subject to the same requirements that apply to the
modification of an order issued in Vermont.  15B V.S.A.
§ 611(b).  Vermont law does not permit retroactive
modification of child support arrears accrued prior to the motion to modify.
 See 15 V.S.A. § 660(e) (order may be modified only as to future support
installments and installments which accrued subsequent to date that motion to
modify was filed).  

¶ 35.       Furthermore,
retroactive modification is prohibited under the terms of the Michigan
order.  The order provides for child support in the amount of twelve
dollars per month per child.  Under the order, support continues until
each child reaches the age of eighteen or graduates from high school, and in no
event continues beyond age nineteen and a half.  The order contains a
provision reducing support by fifty percent if the children spend more than six
overnights per month with their mother.  It provides that the support
order is a final judgment and that amounts due for each month are not subject
to retroactive modification. 

¶ 36.       There is no legal
basis for retroactive modification of this order for the periods prior to the
motion to modify child support.  There is an obvious practical reason why
the magistrate ordered mother’s obligation to be zeroed out.  Father had
not been caring for the children since 2000 and was frequently absent from
their home state.  But without a court-ordered modification, the Michigan
order continued to accrue support in father’s favor.  It would violate the
specific terms of this order and the more general principles of finality of
judgments to permit the reduction of accrued child support based upon a retrospective
finding of a change in circumstances.  Unfortunately for mother, the
modification can operate prospectively only from the date of filing of the
motion to modify.  The case therefore must be remanded for recalculation
of the child support arrearage. 

¶ 37.       We turn finally
to the question of the effective date of the new child support order as
modified in favor of mother.  Section 660(e) of Title 15 provides:

  An order may be modified only as
to future support installments and installments which accrued subsequent to the
date of notice of the motion to the other party or parties.  The date the
motion for modification is filed shall be deemed to be the date of notice to
the opposing party or parties.

This provision
was added in 1990. 1989, No. 220 (Adj. Sess.), § 23. 
Prior to the amendment, the case law permitted the trial court to exercise its
discretion in selecting a date on or after the filing of the motion to
modify.  Towne v. Towne, 150 Vt. 286, 288, 552
A.2d 404, 405-06 (1988).  This Court has recognized that using the
filing date provides policy advantages, because it is “readily discernible” and
likely to discourage delay tactics.  Adamson v. Dodge,
174 Vt. 311, 321, 816 A.2d 455, 464 (2002).  The same policy
preference appears in the amendment to the statute, which “deems” the date of
filing to be the date of notice. 

¶ 38.       The amendment to
§ 660 removed the need for the trial court to determine the date the payor
received notice of the motion to modify.  The statute establishes the date
of filing as the date of notice.  A delay in service of the motion such as
occurred in this case does not delay the effective date of the modification of
the order.  Additionally, we note that OCS filed only one motion to modify
with the family court—the motion filed on September 16, 2008.  There was
no second motion which would give rise to a second filing date.  

¶ 39.       With the date of
notice established by statute as September 16, 2008, the magistrate rejected
mother’s request for an earlier effective date.  The magistrate’s
decision to use the filing date in place of some later date is stated
without explanation, but it is clearly supported by undisputed record evidence.
 Since father left the children with mother in 2000, the ruling that he must
pay support commencing in 2008 is neither unfair nor surprising. A later
effective date would only increase the long period of time the children have
been left without support from their non-custodial parent.  Accordingly,
we affirm the decision of the magistrate to make the revised child support
order effective as of September 16, 2008.

           
The decision of the family division affirming the order of the child support
magistrate is affirmed in all respects except for the retroactive elimination
of mother’s child support arrearage prior to September 16, 2008.  The case
is remanded for a recalculation of the child support arrears in favor of both
parties consistent with this decision. 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Superior
 Judge, Specially Assigned
 
  















[1] 
This address appears to have been that of father’s mother’s home, which he and
she left in December 2008.





[2]
 There is no evidence in the record that OCS ever served father with the
motion and notice of the hearing by certified mail or any of the other methods
permitted by Vermont Rule for Family Proceedings 4.





[3]
 Father was ordered to pay $468 per month from September 16, 2008 until
June 15, 2010; $388.48 per month from June 16, 2010 to June 15, 2011; and
$254.27 per month from June 15, 2011 onward.

 





[4]
 The UCCJA was repealed effective July 1, 2011.  2011, No. 29, §§
8-9.  The family court applied the UCCJA to this case pursuant to 15
V.S.A. § 1096, which states that “[a] motion or other request for relief made
in a child custody proceeding or to enforce a child custody determination which
was commenced before the effective date of this chapter is governed by the law
in effect at the time the motion or other request was made.”

 

 





[5] 
On the same day, father moved for leave to appeal the family division’s August
1, 2012 decision denying his Rule 60(b)(4) motion to
vacate the 2000 order on grounds of insufficient service and personal
jurisdiction.  The family division denied the motion as untimely. On
November 6, father filed a motion in the family division seeking a “Ruling on
Merits of Rule 60(b) Motion for Relief from Judgment.”  The family
division summarily denied this motion.  As we ruled in our December
2012 entry order in this matter, father’s appeal from the August 1 order was
untimely.  Accordingly, on appeal we address only the issues presented by
the magistrate’s May 10 decision and the family division’s September 14
decision concerning child support. 

 

In any event, father waived the defenses of
insufficient service of process and personal jurisdiction with regard to the
2000 order by failing to raise those objections until nearly ten years
later.  See Rollo v. Cameron, 2013 VT 74, ¶ 10, __ Vt. __, __
A.3d __ (“[A] party who has received actual notice of
a suit against him must raise all the jurisdictional objections in a timely
manner.”).





[6]  Those
were father’s July 22 “Reply Memorandum,” “Motion for Extension of time to file
Reply Memorandum,” and “Request for Oral Argument and to Appear
Telephonically,” his August 9 “Motion for Reconsideration of Dismissal,” his
October 3 “Renewal of Motion for Stay,” his October 31 “Rule 60(b)(4) Motion to
Vacate Set Aside 2/23/2009 Default Modification,” and his November 7 “Rule
60(b)(4) Motion for Relief from Judgment/Vacate Aug. 15, 2000 order.” 





[7]
 The magistrate also determined that 15B V.S.A. § 201(5), which confers
jurisdiction over an individual for purposes of modifying child support if “the
child resides in this state as a result of the acts or directives of the
individual,” applied to this case. Because we have determined that father has
sufficient contacts with Vermont to support personal jurisdiction, we need not
address this aspect of the magistrate’s ruling.

 





[8]
 In his 2010 appeal to this Court, father stated that he returned to
Vermont “temporarily in 2007/2008 in order to care for his mother with
Alzheimer’s.” 





[9] 
The magistrate found in her March 10, 2011 order that father resided in Vermont
at the time that OCS filed the motion to modify in September 2008: 

 

  At the
most recent hearing, [father] testified that he lived in Vermont approximately
half the year from January 2008 through December 2008.  He stated that he
travelled back and forth between Vermont and Chicago.  When he was here,
he testified that he usually lived with his mother, although he also had a
friend in Colchester with whom he would occasionally stay.  He said he
also rented a room in Chicago.  Although he did not sign a lease in
Vermont, [father] testified that he had bank accounts in Vermont, he received
mail in Vermont, and he had a Vermont driver’s license.

 

She reiterated this finding in
her May 10, 2012 order.  We have reviewed the record and it
supports the magistrate’s finding. Her finding is further supported by
father’s statement to this Court in his 2010 appeal that he lived with his
mother in Vermont in “2007/2008,” and by the probate court’s 2009 guardianship
order, which indicates that he was living with his mother in September 2008
when the guardianship proceeding was filed.