2004 VT 80

**Robert ATTIG v. Dawna ATTIG**

[862 A.2d 243]

Nos. 03-051 & 03-062

¶ 1. August 26, 2004. This consolidated appeal arises out of two orders of contempt entered against appellant father in the Washington County Family Court January 2003, finding that father willfully failed to pay child support as ordered. Father claims that the family court lacked jurisdiction, that he was provided with improper notice of hearing regarding both the support enforcement and the contempt proceedings, and that the trial court abused its discretion in issuing the contempt order. We affirm.

¶ 2. The parties, who divorced in Illinois in 1996, had one child, Morgan, prior to their marriage, and two children, Stanford and Berkeley, during their marriage. Under a 1999 Illinois child support order, father is required to pay $870 per month in support for Stanford and Berkeley, plus $130 per month to repay over $20,000 in support arrearages for the two children. Father appealed the 1999 order to the Illinois Appellate Court, which affirmed it in July 2000. While the appeal was pending, father also filed a motion to modify the support order based on his lack of employment. Father's motion was denied by the Illinois county court in March 2000. Father again appealed, and, on June 27, 2001, the Illinois Appellate Court affirmed, finding that modification was improper since father "essentially resigned from his work [to] devote more time to litigation aimed at evading financial responsibility for his children."

¶ 3. In 2001, mother relocated to Vermont with the couple's children. Father followed. In March of that year, father initiated litigation in Vermont by filing for enforcement of visitation. In April, notwithstanding his ongoing and identical litigation in Illinois, father also filed a motion in Vermont family court to establish jurisdiction over "all matters relating to support" and to modify the Illinois support order. Father appeared pro se, and acknowledged by affidavit that "[a]ll court papers may be mailed to me by first class mail" at the address he provided.

¶ 4. On April 23, 2001, the family court denied father's request to modify support because of father's failure to register the Illinois child support order. On motion to reconsider, the court gave father twenty days to register the foreign order. Father did so, and on May 25, 2001 he filed a motion asking the family court to assume jurisdiction regarding custody. He also resubmitted his motion and accompanying paperwork requesting the court to modify support, including his notice of pro se appearance. Shortly thereafter, by letter dated June 7, 2001, father notified the court of his change of address to Pennsylvania to start law school.

¶ 5. Mother, with assistance from the Office of Child Support (OCS), initially objected to father's attempt to register and modify the Illinois child support order in Vermont because of father's simultaneous efforts to modify the order in Illinois. For example, two days after the Illinois Appellate Court dismissed father's first Illinois modification petition on June 27, 2001, he filed a new modification petition with the county court in Illinois. The court denied that motion on July 30, 2001. Father appealed yet again, and that appeal was not dismissed until January 9, 2002.

¶ 6. By August 2001, however, mother and OCS revised their stance and moved to register the Illinois support order for purposes of enforcement only. See 15B V.S.A. § 601 (registration of support order for enforcement). Mother and OCS further requested that the family court magistrate refer the matter to the family court judge for contempt proceedings, if appropriate.

¶ 7. On September 21, 2001, the court set a hearing date of November 5, 2001 to resolve the motions to register and served notice on father at his Pennsylvania address by certified mail, return receipt requested with delivery restricted to addressee. The notice was signed for on September 24, and the court received the signed return receipt on September 28. Father, however, failed to appear for the November 5 magistrate's hearing. The magistrate found that father had been properly served and proceeded to hear the case and take evidence in his absence. At the conclusion of the hearing, the magistrate issued an order denying father's motion to register and modify the Illinois support order because of his "failure to appear to prosecute his action" and because of continuing exclusive jurisdiction concerns due to father's pending appeal in Illinois. The magistrate granted mother's motion to register the Illinois support order for enforcement purposes only.

¶ 8. On November 13, the magistrate issued a second order affirming and reiterating her November 5 bench decision finding that the 1999 Illinois support order was valid and controlling. The magistrate further found that father's arrearages since issuance of the 1999 Illinois support order had increased by $6450; that he had the ability to earn more than thirty dollars an hour, or more than $5000 per month; that his voluntary decision to leave his field of employment and to enroll in law school was "not a reasonable choice"; and that father had

the financial ability to comply with the Illinois order and therefore a civil penalty of ten percent of arrears should be assessed. The magistrate ordered father to disclose to the court information regarding his income and assets and to pay $6450 in four lump sum payments over six months. Finally, the magistrate ordered the case referred to the family court judge for contempt proceedings for father's failure to comply with the 1999 Illinois support order.

¶ 9. The family court clerk sent a copy of the November orders by first class mail to father's Pennsylvania address, and on December 13, 2001, father called the court and said he would file an appeal by overnight mail. However, his appeal was not received until December 20, 2001, and, on January 8, 2002, the court granted mother and OCS's motion to dismiss the appeal as untimely. See V.R.F.P. 8(g)(1), (3). Father never appealed this order.

¶ 10. On January 28, 2002, mother, through OCS, filed a motion for contempt against father for failure to comply with the November 13 order. Repeated attempts to schedule the contempt hearing were made, and on October 24, 2002, father was successfully served with notice of a contempt hearing set for October 28, 2002. Father came to the courthouse on that date, but only to file notice of removal of the OCS contempt action to federal court. The family court proceeded with the hearing, found father in default, and asked OCS to provide a draft contempt order.

¶ 11. Shortly thereafter, father filed in federal district court a counterclaim and a motion to implead third-party defendants, including claims against state employees of both Vermont and Illinois and others, alleging, among other things, violations of his federal constitutional rights. Mother and OCS moved to remand the action to state court. On December 11, 2002, the federal court

determined that there was no basis for federal jurisdiction and remanded to the Vermont courts.

¶ 12. Following remand, OCS filed a request for contempt judgment against father and moved to dismiss his counterclaim and third party claims. Subsequently, father moved to withdraw those claims. On January 3, 2003, the family court dismissed father's counterclaims against OCS and mother; granted the request for a contempt judgment; and granted father's request to withdraw his remaining claims. On January 14, 2003 the court issued a default contempt judgment ordering father incarcerated until he made a lump sum payment of $17,757, or made arrangements for some other acceptable payment.

¶ 13. In this consolidated appeal, father attacks the January 2003 orders on several grounds. First, he argues that the underlying November 2001 orders that were the subject of the contempt proceedings are void because he was not subject to personal jurisdiction in Vermont at that time and because he never received notice of the November 5, 2001 hearing. Second, father argues that the January 2003 contempt orders are invalid because he had insufficient notice of the October 28, 2002 contempt hearing, and because the court proceeded with that hearing after he removed the case to federal court. Third, father argues that the family court had no jurisdiction over his federal and state law counterclaims against OCS and mother, and therefore was without power to dismiss those claims with prejudice. Fourth, and finally, father argues for various reasons that those portions of the January 2003 contempt orders relating to his child support obligations are invalid and an abuse of discretion. We find no merit in any of father's propositions.

¶ 14. At oral argument, father withdrew the argument presented in his briefs that the magistrate's November 2001 confirmation order and default child support order were void ab initio for lack of personal jurisdiction, failure of process and service of process, and lack of notice, stating, "I will concede the point at this time that they are not void." Therefore, we do not reach these claims.

¶ 15. Father's second claim of error regards the October 28, 2002 contempt hearing. Father's initial objection is that the court scheduled the contempt hearing only four days after service of process notifying him of the proceedings and that, as a result, he had insufficient time to file an answer or prepare a defense. See V.R.F.P. 16(b)(2) (notice of contempt proceeding to enforce child support order "shall allow the respondent a reasonable time, not less than 15 days before the date set for hearing, to file an answer and prepare a defense"). In response, OCS and mother argue that father was on notice of impending contempt proceedings as of receipt eleven months earlier of the magistrate's November 13, 2001 order, in which the court first moved to charge father with contempt. In addition, mother and OCS separately moved to charge father with contempt on August 29, 2001, and again, by motion on January 28, 2002. The record shows that mother and OCS's second motion for contempt was sent to father by certified mail on January 25, 2002, together with the support order allegedly violated and a sworn statement of specific facts alleged to constitute the contempt. See V.R.F.P. 16(b)(1) (contempt proceedings may be initiated by court or by motion of any party if accompanied by supporting affidavit setting forth the order violated and specific violations).

¶ 16. Thus, father clearly knew of the motions for contempt and that an order to show cause as to why he should not be held in contempt of court was coming. As the record shows, in the spring of 2002 the court attempted service of the show cause order and the motions for con-

tempt by registered mail, return receipt, delivery restricted to addressee. See V.R.F.P. 16(b)(2) (requiring service of contempt motions to follow V.R.F.P. 4(j)(2)). Although father's address was correct — indeed it has remained unchanged since he moved back to Pennsylvania — he refused to accept delivery. Subsequently, father evaded repeated attempts at personal service, forcing the court to reschedule the contempt proceedings three times and resulting in a delay of seven months until father was finally served by a Pennsylvania sheriff during his constitutional law class.

¶ 17. Given that father received copies of the contempt motions and supporting affidavits at least three times, twice in 2001 and once in early 2002, we have no doubt that he had actual notice of the charges against him and the specific facts and allegations on which the charges were based. We conclude therefore that he had more than a reasonable amount of time — eleven months from receipt of the court's motion and nine months from receipt of mother and OCS's second motion — in which to file an answer and prepare a defense. See Reporter's Notes, V.R.F.P. 16(b)(2) (notice requirements for child support contempt proceedings "are generally calculated to provide actual notice in most instances"); see also V.R.F.P. 4(b)(2)(B) (hearing schedule can be altered where "because of unavailability of magistrates or judges *or because of a subsequent failure to complete service* it is not practical" to hold the hearing within the listed timeframe) (emphasis added).

¶ 18. Additionally, we note that father failed to raise a defense of insufficiency of process or insufficiency of service of process in subsequent pleadings or motions to the court. See V.R.F.P. 4(a)(1) (mandating that rules of civil procedure apply to divorce actions); V.R.C.P. 12(h)(1)(B) (process defenses are waived if not made by motion or included in a party's first

responsive pleading); *Myers v. Brown*, 143 Vt. 159, 165, 465 A.2d 254, 257 (1983) ("[W]e have consistently held that parties by their conduct may waive objections to service which is void for lack of substantial compliance with legal prerequisites."); *Harvard Trust Co. v. Bray*, 138 Vt. 199, 203, 413 A.2d 1213, 1216 (1980) ("A defendant will be held to have waived a defense ... if he failed to include it in a motion or pleading *at the time the objection was first available to him*.") (internal brackets, quotation and citation omitted). Upon removal, father filed a counterclaim against mother and OCS with the federal district court, as well as a response to OCS's motion to remand. After remand he filed in state court a motion in response to OCS and mother's motions to dismiss and to issue contempt judgment. None of these pleadings raised an insufficiency of process or insufficiency of service of process defense related to the October 28, 2002 hearing. Therefore, those claims were waived, and may not be raised now.

¶ 19. Father also objects to the October 28 hearing on the theory that once he removed the case to federal court, the family court was without jurisdiction to hold the contempt hearing or take any other action. See 28 U.S.C. § 1446(d) (filing notice of removal with state court "shall effect the removal and the State court shall proceed no further unless and until the case is remanded"). Although the court's January 2003 default contempt orders were issued after remand, father argues that they are void since they are expressly based on father's failure to appear on October 28 and on evidence submitted by OCS at that hearing.

¶ 20. The family court concluded, in its January 14, 2003 default contempt order, that it could rely on the October 28, 2002 hearing since father removed only OCS's motion for contempt and not "the pending action of the Court's own contempt motion." We disagree that 28 U.S.C.

§ 1441(a) or 1441(c) permit partial removal, especially where causes of actions are identical. See, e.g., *Allen v. Pataki*, 207 F. Supp. 2d 126, 127 (S.D.N.Y. 2002) ("[T]he federal removal statute does not permit piecemeal removal but instead requires that an entire case be removed to the district court which then has discretion to remand certain portions of the case, 28 U.S.C. § 1441(c) . . . ."). Thus, the January 2003 contempt orders cannot be sustained on the basis of partial removal. Nonetheless, for different reasons, we conclude that the orders are valid.

¶ 21. Over the last five years, in mostly frivolous litigation spanning at least two states and now the federal courts, father has repeatedly attempted to manipulate the legal system in order to evade his financial responsibility for his children. At the time of his attempted removal — after playing cat and mouse for seven months over service of process — father was facing multiple contempt charges for over $33,000 in support arrearages, as well as civil penalties and a potential arrest warrant. His notice of removal, handed to the judge just minutes prior to the hearing, was improper, incomplete, untimely and completely without merit, and was but another brazen attempt at delay and abuse of the legal system.

¶ 22. After concluding that father had "no basis for federal jurisdiction,"* the federal district court noted that father's petition for removal "was most likely untimely[:] . . . it is evident from the documents submitted that he had notice of the default judgment against him by at least December 13, 2001." See 28 U.S.C. § 1446(b) (notice of removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based").

¶ 23. Father's lack of compliance with § 1446(b) would have been apparent on the face of his petition but for his violation of another part of the statute — § 1446(a) (requiring inclusion in federal removal petitions of "a copy of all process, pleadings, and orders" served upon a defendant in the state action). Only by manipulative and selective filing of documents from the underlying state action could father maintain even a pretense of a proper attempt at removal. Thus, because father's removal attempt was without merit and was made in deliberate violation of statutory requirements, we conclude that it was legally ineffective

* In considering the merits of father's petition, the Federal District Court of Vermont rejected father's attempt to insert a federal question into the case by filing counterclaims and by impleading third-party defendants. Instead the court noted that petitions for removal must be evaluated based on plaintiff's complaint, which in this case was OCS and mother's motion for contempt and did not include a federal question. See *Holmes Group, Inc. v. Vornado Air Circulations Sys., Inc.*, 535 U.S. 826, 831 (2002) ("[F]ederal jurisdiction generally exists only when a federal question is presented on the face of the *plaintiff's* properly pleaded complaint.") (quotations omitted). Regarding diversity jurisdiction, father's motion for removal alleged that the amount in controversy exceeded $75,000, because he had been improperly declared the legal father of his oldest child, Morgan, and would "likely" be held responsible for her college tuition. The court noted that not only were father's allegations speculative, "unsupported and of dubious legal significance," but also that Morgan was not even part of the contempt motion or underlying litigation. Indeed, the question of child support for Morgan has never been litigated in Vermont.

and, therefore, did not deprive the state courts of jurisdiction. See *Cok v. Cok*, 626 A.2d 193, 194 (R.I. 1993) (although state court proceedings after removal and prior to remand are generally void, where removal was deceptive and "without the slightest color of right or merit," subsequent state proceedings are not void); *Hunnewell v. Palm Beach County*, 786 So. 2d 4, 5-6 (Fla. Dist. Ct. App. 2001) (state courts not deprived of jurisdiction by facially improper removal notice as opposed to facially proper but ultimately unsuccessful attempt at removal). Father was in fact present in the proper courtroom on October 28, and even filed a financial affidavit of income and expenses responsive to the contempt proceedings at that time. Rather than stay and defend his claims on the merits, he made a tactical decision to attempt to manipulate the system to his advantage. Thus, if he was deprived of an opportunity for a hearing it was by his own election, and he must now live with the consequences of his default.

¶ 24. Father's third claim on appeal is that the family court had no statutory authority under 4 V.S.A. § 454 to hear his state and federal civil rights counterclaims against mother and OCS, and therefore was without jurisdiction to dismiss those claims "with prejudice." Without authority to adjudicate the merits of these claims, the court could only have dismissed them for lack of jurisdiction. Pursuant to Vermont Rule of Civil Procedure 41(b), such dismissals are without prejudice, and therefore the premise of father's complaint is wrong.

¶ 25. Finally, father argues for various reasons that the family court abused its discretion in issuing the January 14, 2003 default contempt order. Father first objects to the court's finding that, as of September 30, 2002, he owed $33,702 in past support, plus $3,228.72 in interest on the outstanding balance since October 31, 2001. Father appears to argue that inclusion of the pre-1999 arrearages in the court's findings is an abuse of discretion, since the arrearages were already incorporated into the 1999 Illinois support order and cannot be modified in an enforcement proceeding. We find no error. The court's findings accurately reflect father's total past due support obligation. Its order to purge contempt is for $17,757 and correctly omits the pre-1999 arrearages.

¶ 26. Father next objects to the court's findings that father had the ability to meet his support obligations; that he had access to significant funds, including $20,000 in family loans; and that his nonpayment had been willful. In a contempt action for nonpayment the moving party must show that the obligor violated the court's child support order. V.R.F.P. 16(b)(4); *Russell v. Armitage*, 166 Vt. 392, 401, 697 A.2d 630, 635 (1997). Inability to comply with the order is a defense, but the obligor has the burden to establish facts necessary to justify the failure to comply. V.R.F.P. 16(b)(3); see also Reporter's Notes, V.R.F.P. 16(b)(3) (citing *Russell*, 166 Vt. at 401, 697 A.2d at 636, and *Spabile v. Hunt*, 134 Vt. 332, 334-35, 360 A.2d 51, 52 (1976)). If an obligor fails to answer or appear, the court may consider the factual allegations of the order admitted and may find the obligor in contempt. V.R.F.P. 16(b)(6); see also *Russell*, 166 Vt. at 399, 697 A.2d at 635 (if obligor fails to meet his burden, "the court may find him in willful violation of the order and ... determine appropriate means by which to ensure compliance with the order").

¶ 27. Here, mother and OCS amply demonstrated that father did not comply with either the 1999 Illinois support order or the 2001 Vermont order. Father failed to answer or appear at the contempt hearing. Thus, under V.R.F.P. 16(b)(6), the family court had full discretion to find father in contempt and impose sanctions.

¶ 28. To the extent that father is now asking us to treat his affidavit of income and assets and tax returns, submitted to the court on October 28, 2002 together with his notice of removal, as an answer to the contempt charges and a defense based on inability to pay, we decline. The family court considered these documents in making its January 2003 orders, and its findings are amply supported by the evidence. In fact, rather than establishing father's inability to pay, his unsigned tax returns confirm that father had the capacity to earn up to $80.00 per hour as a consultant. The fact that, as determined by the Illinois courts, father ceased employment because he "essentially resigned from his work [to] devote more time to litigation aimed at evading financial responsibility for his children" does not establish a defense of inability to pay. Similarly, father's financial affidavit also establishes that he has received loans in excess of $20,000 from his family. The fact that father elected to use these loans in lieu of employment to pay his law school tuition, personal needs and legal expenses, while avoiding entirely his support obligations to his children, does not establish an inability to pay.

¶ 29. Father's citations to Illinois cases holding that modification of support is appropriate where the supporting spouse terminates employment to further his or her education are unavailing. See *In re Marriage of Horn*, 650 N.E.2d 1103, 1106 (Ill. App. Ct. 1995) (holding voluntary change in employment is not grounds for modification if the change was "prompted by a desire to evade financial responsibilities"). This is not a modification action — indeed, father's requests for modification have been repeatedly denied, both in Illinois and Vermont. Having been denied modification, father may not unilaterally decide to cease seeking employment and quit making child support payments so he can go to law school.

¶ 30. Lastly, father argues that the contempt purge payment — set at $17,757, an amount equal to his entire post-1999 arrearages, plus penalties and interest — was beyond his ability to pay and was therefore akin to an illegal criminal contempt sanction. See *Sheehan v. Ryea*, 171 Vt. 511, 512-13, 757 A.2d 467, 469 (2000) (mem.) (civil contempt purge order beyond a defendant's ability to pay denies him a chance to avoid incarceration and is therefore tantamount to criminal contempt). We disagree.

¶ 31. Rule 16 expressly authorizes the court to enter a contempt judgment in the amount necessary to compensate the aggrieved party. V.R.F.P. 16(c)(3) (compensatory fines); see also Reporter's Notes, V.R.F.P. 16(c)(3) (rule authorizes court to order defendant in contempt to pay arrearages as a purge condition). Once the penalty is imposed, it is defendant's burden to prove an inability to pay. *Spabile*, 134 Vt. at 335, 360 A.2d at 52. Here, the family court found that father had the ability to pay the full amount. As determined above, that finding was not an abuse of discretion.

¶ 32. Additionally, the trial court order does not mandate that father pay the entire purge amount or go to jail. The contempt order also gave father the option of arranging with the court "other acceptable payment." Thus, not only did the order give father two keys to get out of jail, see *Sheehan*, 171 Vt. at 512, 757 A.2d at 469 (defendant must have ability to comply with civil contempt order or order will be treated as criminal contempt), but it also allowed him, upon his future return to court, yet another chance to prove that the purge conditions were excessive and beyond his ability to pay.

*Affirmed.*