2014 VT 2

### Paula Pahnke/Office of Child Support v. Jonathan Pahnke

[88 A.3d 432]

Nos. 12-387, 12-416 & 13-007

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed January 10, 2014

---

*Sarah B. Haselton*, Burlington, for Plaintiff-Appellee.

*Jonathan A. Pahnke*, Pro Se, Findlay, Ohio, Defendant-Appellant.

¶ 1. **Crawford, Supr. J.**, Specially Assigned. Father appeals from the modification of a foreign child support order. He argues that he was never properly served with the motion to modify child support, that the Vermont family division lacks personal and subject matter jurisdiction over him and this matter, and that the magistrate improperly ruled that mother did not owe him arrears for the period preceding the modification. We affirm in part, but remand for recalculation of mother's child support arrearage.

¶ 2. Father and mother were divorced in Michigan in 1997. The Michigan decree awarded custody of the parties' four children to father. Mother was ordered to pay child support of $48 per week.

¶ 3. Following the divorce, mother moved to Vermont. Within a short period of time, father also moved to Vermont with the children so that they could be closer to mother. He then left Vermont with the two younger children and moved to Nashville, Tennessee to further his education. The two older children remained behind with mother in Vermont. Father later brought the two younger children back to Vermont, and by 2000, all four children were living in Vermont with mother. The four children have remained with mother in Vermont since 2000. The youngest is now 19.

¶ 4. In August 2000, mother filed an emergency motion in the Chittenden Family Court to modify parental rights and responsibilities. She sought legal and physical custody of the children. The family court issued an amended order on August 15, 2000 granting sole physical and legal parental rights and responsibilities for the children to mother. The court issued the order on an emergency basis and ordered mother to submit proof of service of the amended order within three days. Within a few weeks, father signed an acknowledgment of service of the amended custody order.

¶ 5. In January 2004, the court suspended father's parent-child contact until further order. Later that year, OCS sought to register the Michigan child support order with the Chittenden Family Court. Father signed two acceptance-of-service forms acknowledging receipt of the request for registration and prior motions filed in the case. He provided a post office box address in

Shelburne, Vermont. The family court issued an order approving registration of the Michigan order in December 2004.

¶ 6. In 2006, the parties returned to family court after mother filed a relief-from-abuse petition. Both parties appeared for the final hearing, and the court denied mother's request for a final order. Mother also moved for a modification of parent-child contact. Father did not file a response to the motion. The court ordered no contact with father until further order.

¶ 7. On September 16, 2008, OCS filed a motion to modify the Michigan support order. The court scheduled hearings in November and December 2008 that were continued due to lack of service on father. In January 2009, the family court issued an order for alternative service at an address in Shelburne.[1] Service by tack process occurred on January 12, 2009.

¶ 8. The magistrate issued a default child support order on February 23, 2009, which modified mother's child support obligation to $0, relieved her of any obligation to pay arrears, and established a support obligation for father of $1063.31 per month. Mother appealed the order because the award of support was not retroactive to the change of custody in August 2000. In July 2009, the family court denied mother's appeal and affirmed the decision of the child support magistrate.

¶ 9. In August 2009, father filed an emergency motion to set aside the magistrate's February order. He provided an address in Kendallville, Indiana. He challenged the service by tack order on the grounds that he was not living at his mother's home in Shelburne in January 2009 when the sheriff served the motion to modify. He also challenged the substance of the support calculation, which was based on estimates of support he had received over the years from his mother. The family court denied the motion for emergency relief on the grounds that service of the hearing notice was proper and father could request a modification of support if his financial situation had changed. Father appealed to this Court, which determined that the service by tack order was inadequate after OCS admitted that the Shelburne address was not father's "dwelling house or usual place of abode." See *Pahnke v. Pahnke*, No. 2010-032, 2010 WL 7789284, at *2 (Vt. Dec. 8, 2010) (unpub. mem.), https://www.vermontjudiciary.org/UPEO2006-

---

[1] This address appears to have been that of father's mother's home, which he and she left in December 2008.

2010/eo10-032.pdf. We reversed the default child support order and remanded the case for further proceedings. *Id.*

¶ 10. On remand, father moved to dismiss the renewed motion to modify child support for lack of personal jurisdiction. The child support magistrate denied father's motion on March 10, 2011. She found numerous contacts between father and the State of Vermont prior to September 2008, when OCS filed the motion to modify child support, including residence in the state while he cared for his mother in 2008. The magistrate ordered OCS to serve father with another copy of the motion to modify and a hearing notice, and stated that the motion to modify would be set for hearing once the court received proof of service. The family court dismissed an appeal of this ruling because it was not a final order.

¶ 11. On June 15, 2011, OCS sent father the motion to modify child support by regular mail. The magistrate scheduled mother's motion to modify child support for a hearing on October 10, 2011, and court staff sent notice of the hearing to both parties and OCS on September 1, 2011.[2] Father filed a motion for leave to proceed in forma pauperis, which was granted by the clerk. In September he also filed a "Notice of Change of Address" requesting that "[h]enceforth please send all notices to: [a street address] in Wooster, Ohio."

¶ 12. On September 19, father filed a notice of appeal from the family court order dismissing his appeal from the magistrate's ruling on personal jurisdiction. At the same time, he filed a motion to stay the child support modification hearing. This Court dismissed the appeal on the ground that it was untimely filed. See *Pahnke v. Pahnke*, No. 2011-331 (Vt. Oct. 11, 2011) (unpub. mem.).

¶ 13. On October 11, 2011 the family court issued a second hearing notice to the parties, indicating that the child support modification hearing was reset for November 14. Father filed a motion on October 31 asking the magistrate to vacate her 2009 decision to "zero out" the original child support order issued in Michigan at the time of the divorce decree. On November 7, father filed a motion pursuant to Vermont Rule of Civil Procedure 60(b)(4) to vacate the original family court order in 2000 awarding custody of the children to mother. The motion raised issues of service of process and personal and subject matter jurisdiction.

---

[2] There is no evidence in the record that OCS ever served father with the motion and notice of the hearing by certified mail or any of the other methods permitted by Vermont Rule for Family Proceedings 4.

¶ 14. The magistrate held an evidentiary hearing on the motion to modify child support on November 14, 2011 and March 12, 2012. Father participated in both days of the hearing by telephone. On May 10, 2012, the magistrate issued a decision on the motion. The decision confirmed that mother owed father nothing under the Michigan order from the date when mother was granted custody in 2000 to the date that OCS filed the motion to modify in 2008. It awarded mother support from the date of the modification motion forward.[3] A child support order incorporating the findings in the magistrate's decision was issued in July. Father appealed the magistrate's May 10 decision to the family court.

¶ 15. On August 1, 2012, the family court denied father's Rule 60(b)(4) motion to vacate the 2000 custody order. It ruled that father's challenge to an existing order under Rule 60(b)(4) on grounds of "voidness" must relate not to the merits of the individual decision but to the larger question of whether the case was of the type over which the family court had jurisdiction. The family court concluded that under the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. § 1042,[4] Vermont had jurisdiction over motions to modify foreign custody orders under the circumstances alleged in this case. It denied father's challenge to the court's exercise of personal jurisdiction on the grounds that personal presence of the defendant in the state is not mandatory under the UCCJA and that father had failed to appeal previous orders of the court establishing personal jurisdiction.

¶ 16. On September 14, 2012, the family court affirmed the magistrate's decision modifying child support. The court ruled that father had waived any defect in service of process through his filings and appearance at the contested hearing. With regard to the merits, the family court accepted the magistrate's factual findings and her conclusions of law. On October 15, father filed a

---

[3] Father was ordered to pay $468 per month from September 16, 2008 until June 15, 2010; $388.48 per month from June 16, 2010 to June 15, 2011; and $254.27 per month from June 15, 2011 onward.

[4] The UCCJA was repealed effective July 1, 2011. 2011, No. 29, §§ 8-9. The family court applied the UCCJA to this case pursuant to 15 V.S.A. § 1096, which states that "[a] motion or other request for relief made in a child custody proceeding or to enforce a child custody determination which was commenced before the effective date of this chapter is governed by the law in effect at the time the motion or other request was made."

notice of appeal in this Court from the family court's September 14 decision.[5]

¶ 17. On appeal, father makes three related arguments: first, that service of the hearing notice and motion to modify was insufficient; second, that the family court did not have personal jurisdiction over father; and third, that the family court violated the jurisdictional requirements of the Uniform Interstate Family Support Act (UIFSA), 15B V.S.A. §§ 101-904, when it modified the Michigan child support order. Father also argues that the magistrate erred in "zeroing out" mother's child support arrearage under the Michigan order for the years following the change of custody in 2000 to mother. These are questions of law, which we consider de novo. *Office of Child Support ex rel. Lewis v. Lewis,* 2004 VT 127, ¶ 6, 178 Vt. 204, 882 A.2d 1128. In doing so, we accept the magistrate's findings of fact unless they are clearly erroneous. *Cavallari v. Martin,* 169 Vt. 210, 220-21, 732 A.2d 739, 746-47 (1999).

## I. Service of Process

¶ 18. As noted above, we previously remanded this case because the magistrate's February 2009 default order was entered without proper service upon father. *Pahnke,* No. 2010-032, at 2. Although father subsequently appeared at and participated in a two-day contested child support modification hearing, he renews his complaint that service of the hearing notice and motion to modify child support was improper.

¶ 19. Vermont Rule for Family Proceedings 4(b)(2)(B) provides for service of the complaint (or in this case, the motion to modify)

---

[5] On the same day, father moved for leave to appeal the family division's August 1, 2012 decision denying his Rule 60(b)(4) motion to vacate the 2000 order on grounds of insufficient service and personal jurisdiction. The family division denied the motion as untimely. On November 6, father filed a motion in the family division seeking a "Ruling on Merits of Rule 60(b) Motion for Relief from Judgment." The family division summarily denied this motion. As we ruled in our December 2012 entry order in this matter, father's appeal from the August 1 order was untimely. Accordingly, on appeal we address only the issues presented by the magistrate's May 10 decision and the family division's September 14 decision concerning child support.

In any event, father waived the defenses of insufficient service of process and personal jurisdiction with regard to the 2000 order by failing to raise those objections until nearly ten years later. See *Rollo v. Cameron,* 2013 VT 74, ¶ 10, 194 Vt. 499, 82 A.3d 1184 ("[A] party who has received actual notice of a suit against him must raise all the jurisdictional objections in a timely manner.").

and the hearing notice by (1) personal service, (2) certified mail, or ordinary first-class mail if the certified mail envelope is rejected, and (3) publication. V.R.F.P. 4(b)(2)(B)(iii)-(v). In her May 2012 order, the magistrate carefully considered the question of service of process upon father. Father has proved very difficult to serve either by certified mail or by personal service as required by Rule 4(b)(2)(B). Father moves frequently. Since 2000 he has lived in Tennessee, Vermont, Indiana and Ohio. In a "sheriff service information sheet" provided to a sheriff in Nashville, Tennessee in 2003 as part of efforts by the Chittenden Family Court to make personal service, mother described him in prophetic terms:

> Will defendant avoid service or is there anything the serving officer should know when he/she attempts service of the paperwork on the person?

> Yes will avoid service if at all possible. Don't call him. He is a *very* suspicious type (unless one is clever).

Numerous motions and court documents sent to father's addresses over the past thirteen years have been returned as undeliverable.

¶ 20. Despite eluding service, father has participated actively in this case since 2009 and has frequently updated the court with his address. As the magistrate noted, father's initial filings did not reserve the defense of lack of service. In father's "Emergency Motion/Appeal to Set Aside and/or modify Order Re: Retroactive Child Support and Stay Enforcement Action Pending Hearing" filed on August 13, 2009, he provided an address in Kendallville, Indiana and informed the family court by letter that he would participate at any scheduled hearing by telephone. He provided similar instructions on November 2, 2009 when he filed a motion for reconsideration of the denial of his emergency motion. For both filings, he provided an "Official Notice of Change of Mailing Address." Similarly, in the course of his 2010 appeal to this Court, he provided his Kendallville address for use by mother and the court.

¶ 21. Only after the remand from this Court in December 2010 did father begin to qualify his participation as a "special appearance" and assert lack of service of the 2000 amended custody order and the 2008 motion to modify and hearing notice as defects in the legal process. Even then, however, he did not object to

OCS's service of the motion to modify in 2011 by regular mail. He also received notice by regular mail from the family court of the hearing dates for the 2011-2012 contested child support hearings. He participated in both hearings by telephone and makes no claim that he lacked actual notice of the hearings.

¶ 22. ▉ The defense of insufficiency of service of process is waived if it is not raised at the first opportunity. Civil Rule 12(h)(1) compels the early assertion of this and other procedural defenses in order to avoid piecemeal litigation over preliminary issues that do not go to the substantive heart of the case. See 5C C. Wright & A. Miller, Federal Practice and Procedure § 1391 (3d ed. 2004). This principle applies equally in cases for which there is no requirement of a responsive pleading, including family court petitions and motions. See *Rollo*, 2013 VT 74, ¶ 10 (stating that defendant in relief-from-abuse case must raise issue of insufficiency of service by motion).

¶ 23. After we remanded this case in 2010 for lack of service, the family court ordered OCS to serve father with the 2008 motion to modify. OCS sent the motion to father by regular mail on June 15, 2011. OCS did not comply with the steps required for service by Family Rule 4(b)(2)(B). Father, however, failed to challenge the sufficiency of the 2011 service in any of the motions that he filed prior to the November 14, 2011 modification hearing.[6] Though he continued to argue that he was never properly served at the inception of this case in 2000, he did not object to OCS's service of the motion to modify by regular mail. Father therefore waived this defense. See *Attig v. Attig*, 2004 VT 80, ¶ 18, 177 Vt. 544, 862 A.2d 243 (mem.) (holding that father waived a claim of insufficiency of service of process where he failed to raise the issue in motions or pleadings in family court).

¶ 24. The first time around, in the context of a default order, this Court accepted the parties' representation that father did not get notice of the 2008 motion to modify or the subsequent hearing due to a mistake in the tack process. The second time around,

---

[6] Those were father's July 22 "Reply Memorandum," "Motion for Extension of time to file Reply Memorandum," and "Request for Oral Argument and to Appear Telephonically," his August 9 "Motion for Reconsideration of Dismissal," his October 3 "Renewal of Motion for Stay," his October 31 "Rule 60(b)(4) Motion to Vacate Set Aside 2/23/2009 Default Modification," and his November 7 "Rule 60(b)(4) Motion for Relief from Judgment/Vacate Aug. 15, 2000 order."

father's argument is less compelling. Father repeatedly provided the family court with an address for delivery of the hearing notice and other papers. He obviously knew about the pending motion to modify, since in 2009 he filed his own emergency motion to set aside the order establishing child support in the mother's favor. He then pursued a successful appeal related to that order. When OCS returned to court to seek modification, father received actual notice of the motion and the hearing date by mail. He responded by filing several motions prior to the hearing. He obtained permission from the court to appear by telephone. He participated by telephone at both hearings. After the first hearing, he requested additional hearing time and more opportunity for discovery, which he was granted.

¶ 25. Although father raised the issue of insufficient service with regard to the 2000 and 2009 orders when he participated in the second modification process, he did not object to service of the renewed motion to modify filed in 2011 and the second hearing until *after* the 2011-2012 child support modification hearings. By making filings with the court and supplying his address, he waived the defense of service of process, just like any other litigant who fails to preserve the defense through his conduct in appearing to defend himself on the merits. See *Rollo*, 2013 VT 74, ¶ 11 (holding that defendant in family case who receives actual notice of an action must raise defense of insufficient service by filing a motion to dismiss prior to merits hearing or raise the defense at the hearing itself otherwise the defense is waived); *Myers v. Brown*, 143 Vt. 159, 165, 465 A.2d 254, 257 (1983) ("[P]arties by their conduct may waive objections to service which is void for lack of substantial compliance with legal prerequisites."); *In re Stocker*, 133 Vt. 161, 163, 333 A.2d 92, 93 (1975) (explaining that defendant's "failure to raise a defense based on insufficiency of service of process for thirteen months after the bringing of the appeal puts the question out of reach by waiver"). The issue is not merely a matter of form. A party who raises the defense of service of process at the first opportunity provides notice to the court and to the other side that the case may not be ready for a hearing since he is insisting on service in compliance with the applicable rule. A party like father, on the other hand, who responds to the motion to modify by providing an address and attending the hearing indicates just as clearly that he has appeared to address the merits. A party is not permitted to

appear to defend the claim on the merits without specifically objecting to service, and then to complain that he was improperly served.

## II. Personal Jurisdiction

¶ 26. ■ ■ Father argues that Vermont lacks personal jurisdiction over him. In order for a Vermont court to have personal jurisdiction over a nonresident defendant who is outside of Vermont, there must be an enabling statute conferring personal jurisdiction over nonresident defendants. *Poston v. Poston,* 160 Vt. 1, 5, 624 A.2d 853, 856 (1993). Here, the applicable enabling statute is § 201 of UIFSA, which authorizes the family court to exercise jurisdiction over a nonresident for purposes of establishing or modifying a child support order where "there is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction." 15B V.S.A. § 201(7). The terms of this provision are broad enough to permit a court to exercise jurisdiction over a nonresident defendant to the full extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Official Comment, 15B V.S.A. § 201 (stating that intent of § 201 is to insure that state has long-arm statute as broad as constitutionally permitted).

¶ 27. ■ For a state to exercise personal jurisdiction over a nonresident defendant, due process requires that the nonresident "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quotation omitted). We therefore must look to whether father has "minimum contacts" with the State of Vermont, examining "the interests of the plaintiff and the forum state in proceeding with the action there; the nature and quality of the defendant's activity within that state; and whether it is fair and reasonable to require the defendant to conduct a defense within the plaintiff's choice of forum." *Poston,* 160 Vt. at 5-6, 624 A.2d at 856 (citing *Kulko v. Cal. Super. Ct.,* 436 U.S. 84, 92 (1978)).

¶ 28. ■ The first and third elements weigh in favor of Vermont as a forum. Both mother and the State of Vermont have a strong interest in proceeding with this action in Vermont because the

children who are the subject of the support order reside here. At times, the family has received public assistance from the State. In addition, since father has shown himself to be willing and able to vigorously defend himself in these proceedings by telephone, he is not unduly prejudiced by the choice of forum.

¶ 29. The second element also weighs in favor of Vermont as a forum. As the magistrate determined in her order, father has had consistent contact with Vermont since 1998.[7] Following the Michigan divorce, he moved here in 1998 and lived in Montgomery for nearly a year. He filed a divorce action against his second wife in Franklin County and alleged residence in Swanton, Vermont. After mother moved to Vermont, father came and went with the children between 1998 and 2000. In 2000 he returned to Vermont to bring the older children to live with their mother. In 2006 he was present in Vermont and appeared in family court as the defendant in mother's unsuccessful attempt to obtain a relief-from-abuse order. By his own admission, he resided with his mother in Shelburne, Vermont in "2007/2008."[8] These contacts are clearly sufficient to meet the due process requirements set forth in *International Shoe*. See *Packard v. Packard*, 613 N.E.2d 923, 927-28 (Mass. App. Ct. 1993) (finding that father had sufficient contacts with forum state to be subject to long-arm jurisdiction where parties had married in state and resided there briefly, where he returned to state during pendency of divorce action, and had filed separation agreement and visitation motions in state court, even though it had been four years since the latter actions); *Harris v. Harris*, 410 S.E.2d 527, 532 (N.C. Ct. App. 1991) (finding that father had sufficient contacts with forum state where parties were married and had resided in state twenty years earlier, father visited relatives in state frequently in intervening years and after mother moved back to state, and father traveled to state for business regularly). In sum, father has sufficient contacts with Vermont to support the exercise of personal jurisdiction over him under the Due Process Clause.

---

[7] The magistrate also determined that 15B V.S.A. § 201(5), which confers jurisdiction over an individual for purposes of modifying child support if "the child resides in this state as a result of the acts or directives of the individual," applied to this case. Because we have determined that father has sufficient contacts with Vermont to support personal jurisdiction, we need not address this aspect of the magistrate's ruling.

[8] In his 2010 appeal to this Court, father stated that he returned to Vermont "temporarily in 2007/2008 in order to care for his mother with Alzheimer's."

### III. Subject Matter Jurisdiction Under UIFSA

¶ 30. The third issue raised by father is whether the modification proceeding violated the statutory preference established by UIFSA for modification by the issuing state. In an effort to avoid conflicting child support orders, UIFSA strictly limits the authority of the receiving state to modify the original order. Unless the parties file a written consent in the issuing state for a court of this state to modify the order, see 15B V.S.A. § 611(a)(2), the person seeking to modify the order must satisfy the threshold requirements set forth in 15B V.S.A. § 611(a)(1).

¶ 31. First, the order must be formally registered in the forum state. 15B V.S.A. § 611(a). In this case, the Michigan order was registered in Vermont in 2004. Second, none of the parties, including the children, may still reside in the issuing state. *Id.* § 611(a)(1)(A). This requirement is also satisfied, as neither father nor mother, nor their children, live in Michigan. Third, the respondent must be subject to the personal jurisdiction of this state. *Id.* § 611(a)(1)(C). As discussed above, the magistrate correctly determined that father was subject to the personal jurisdiction of the Vermont family court. The remaining requirement is that the party seeking the modification must be a nonresident of this state. *Id.* § 611(a)(1)(B). In other words, a party cannot move away from the issuing state and seek a modification through his or her new home state. As mother is a resident of Vermont, this requirement is not satisfied. Section 611 therefore does not afford a basis for the Vermont family court to modify the Michigan order.

¶ 32. ▮▮ ▮▮ Section 613 of Title 15B creates an exception to § 611. It permits a court of this state to modify a foreign support order when all of the parties reside in this state. Section 613 states:

> (a) If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order.

> (b) A tribunal of this state exercising jurisdiction under this section shall apply the provisions of chapters 1 and 2 of this title, this chapter, and the procedural and

substantive law of this state to the proceeding for enforcement or modification. Chapters 3, 4, 5, 7, and 8 of this title do not apply.

15B V.S.A. § 613. "This section is designed to make it clear that when the issuing state no longer has continuing, exclusive jurisdiction and the obligor and obligee reside in the same state, a tribunal of that state has jurisdiction to modify the child support order and assume continuing, exclusive jurisdiction." Official Comment, 15B V.S.A. § 613. When OCS filed the motion to modify the child support order in 2008, mother and the children lived in Vermont, and the record demonstrates that father lived with his own mother in Vermont during that year.[9] Thus, under § 613, Vermont assumed continuing, exclusive jurisdiction over this matter in 2008. Father's subsequent moves to Indiana and then to Ohio did not deprive the Vermont court of jurisdiction. See 15B V.S.A. § 205 (stating that once this state assumes continuing, exclusive jurisdiction over a support order, that jurisdiction continues as long as this state remains the residence of the obligor, the obligee, or the child).

### IV. Child Support Arrearage

¶ 33. The parties' claims for child support arrears raise two issues: did the magistrate have authority to eliminate support due to father under the Michigan order prior to modification of the order; and what is the effective date for the order as modified?

---

[9] The magistrate found in her March 10, 2011 order that father resided in Vermont at the time that OCS filed the motion to modify in September 2008:

> At the most recent hearing, [father] testified that he lived in Vermont approximately half the year from January 2008 through December 2008. He stated that he travelled back and forth between Vermont and Chicago. When he was here, he testified that he usually lived with his mother, although he also had a friend in Colchester with whom he would occasionally stay. He said he also rented a room in Chicago. Although he did not sign a lease in Vermont, [father] testified that he had bank accounts in Vermont, he received mail in Vermont, and he had a Vermont driver's license.

She reiterated this finding in her May 10, 2012 order. We have reviewed the record and it supports the magistrate's finding. Her finding is further supported by father's statement to this Court in his 2010 appeal that he lived with his mother in Vermont in "2007/2008," and by the probate court's 2009 guardianship order, which indicates that he was living with his mother in September 2008 when the guardianship proceeding was filed.

¶ 34. We first consider whether the magistrate and the family division erred in eliminating the child support awarded to father by the Michigan court for the period between the change of custody in 2000 and the filing of the motion to modify in 2008. Under UIFSA, modification of a registered foreign child support order is subject to the same requirements that apply to the modification of an order issued in Vermont. 15B V.S.A. § 611(b). Vermont law does not permit retroactive modification of child support arrears accrued prior to the motion to modify. See 15 V.S.A. § 660(e) (order may be modified only as to future support installments and installments which accrued subsequent to date that motion to modify was filed).

¶ 35. Furthermore, retroactive modification is prohibited under the terms of the Michigan order. The order provides for child support in the amount of twelve dollars per month per child. Under the order, support continues until each child reaches the age of eighteen or graduates from high school, and in no event continues beyond age nineteen and a half. The order contains a provision reducing support by fifty percent if the children spend more than six overnights per month with their mother. It provides that the support order is a final judgment and that amounts due for each month are not subject to retroactive modification.

¶ 36. ▆▆▆ There is no legal basis for retroactive modification of this order for the periods prior to the motion to modify child support. There is an obvious practical reason why the magistrate ordered mother's obligation to be zeroed out. Father had not been caring for the children since 2000 and was frequently absent from their home state. But without a court-ordered modification, the Michigan order continued to accrue support in father's favor. It would violate the specific terms of this order and the more general principles of finality of judgments to permit the reduction of accrued child support based upon a retrospective finding of a change in circumstances. Unfortunately for mother, the modification can operate prospectively only from the date of filing of the motion to modify. The case therefore must be remanded for recalculation of the child support arrearage.

¶ 37. We turn finally to the question of the effective date of the new child support order as modified in favor of mother. Section 660(e) of Title 15 provides:

> An order may be modified only as to future support installments and installments which accrued subsequent to

> the date of notice of the motion to the other party or parties. The date the motion for modification is filed shall be deemed to be the date of notice to the opposing party or parties.

This provision was added in 1990. 1989, No. 220 (Adj. Sess.), § 23. Prior to the amendment, the case law permitted the trial court to exercise its discretion in selecting a date on or after the filing of the motion to modify. *Towne v. Towne,* 150 Vt. 286, 288, 552 A.2d 404, 405-06 (1988). This Court has recognized that using the filing date provides policy advantages, because it is "readily discernible" and likely to discourage delay tactics. *Adamson v. Dodge,* 174 Vt. 311, 321, 816 A.2d 455, 464 (2002). The same policy preference appears in the amendment to the statute, which "deems" the date of filing to be the date of notice.

¶ 38. The amendment to § 660 removed the need for the trial court to determine the date the payor received notice of the motion to modify. The statute establishes the date of filing as the date of notice. A delay in service of the motion such as occurred in this case does not delay the effective date of the modification of the order. Additionally, we note that OCS filed only one motion to modify with the family court — the motion filed on September 16, 2008. There was no second motion which would give rise to a second filing date.

¶ 39. With the date of notice established by statute as September 16, 2008, the magistrate rejected mother's request for an *earlier* effective date. The magistrate's decision to use the filing date in place of some *later* date is stated without explanation, but it is clearly supported by undisputed record evidence. Since father left the children with mother in 2000, the ruling that he must pay support commencing in 2008 is neither unfair nor surprising. A later effective date would only increase the long period of time the children have been left without support from their noncustodial parent. Accordingly, we affirm the decision of the magistrate to make the revised child support order effective as of September 16, 2008.

*The decision of the family division affirming the order of the child support magistrate is affirmed in all respects except for the retroactive elimination of mother's child support arrearage prior to September 16, 2008. The case is remanded for a recalculation of the child support arrears in favor of both parties consistent with this decision.*